HALLIE K. HOLLOWAY, SUE HOLLOWAY, DAMIEN LEE HOLLOWAY, AND SWANZETT HOLLOWAY v. WACHOVIA BANK & TRUST COMPANY, N.A., AND JEAN DAWSON

No. 183A93

(Filed 30 December 1994)

**1. Damages § 99 (NCI4th)— punitive damages—pleading not required**

A plaintiff need not specially plead punitive damages as a prerequisite to recovering them at trial. Where a pleading fairly apprises opposing parties of facts which will support an award of punitive damages, they may be recovered at trial without having been specially pleaded. N.C.G.S. § 1A-1, Rules 8(a) and 54(c), when read together, reject any strict rule that a certain measure of damages must be specifically sought in the prayer for relief.

**Am Jur 2d, Damages §§ 842 et seq.**

**2. Damages § 104 (NCI4th)— punitive damages—not specially pleaded—sufficiency of allegation**

A complaint fairly advised defendants of facts which would support an award of punitive damages where the complaint alleged that Dawson intentionally pointed a gun at the plaintiffs

HOLLOWAY v. WACHOVIA BANK AND TRUST CO.

[339 N.C. 338 (1994)]

in an attempt to intimidate them while repossessing plaintiff Hallie Holloway's car; it also alleged that Dawson reached into Hallie's vehicle and struggled with her, making contact with plaintiffs Damien Holloway and Hallie in the process; the three torts alleged in the complaint (assault, battery, and intentional infliction of emotional distress) support punitive damages when accompanied by aggravation; only the claim based on the Debt Collection Act would not support punitive damages; and the use of the words "violently," "willfully," "forceful," and "aggressive" tend to put defendants on fair notice of facts which would support an award of punitive damages at trial. Although defendants contend that the omission of a claim for punitive damages and the inclusion of a specific claim for treble damages led to the reasonable assumption that punitive damages were not sought because a plaintiff may not recover both punitive and treble damages, a plaintiff must make an election only for purposes of actual recovery and is not precluded from seeking both punitive and treble damages. Plaintiffs' unsuccessful attempt to amend their complaint and to file a second suit requesting punitive damages involved only gross negligence in hiring defendant Dawson and in violating certain statutes and had no bearing on whether plaintiffs would seek punitive damages at trial for the assault, battery, and intentional infliction of emotional distress claims. Finally, defendants' assertion that it would have been unfair to submit punitive damages because they were not prepared was not persuasive.

**Am Jur 2d, Damages §§ 842 et seq.**

3. **Intentional Infliction of Mental Distress § 2 (NCI4th)— repossession of automobile—summary judgment for defendant—threat of future harm**

The trial court erred in an action arising from an automobile repossession by granting summary judgment for defendants on a claim for intentional infliction of emotional distress (IIED) based on the lack of a threat of future harm. *Dickens v. Puryear*, 302 N.C. 437, did not hold that a threat of future harm is a necessary element required to sustain the IIED claim. Even when the IIED claim arises from facts which would also sustain claims for assault and battery, which may or may not be barred by the statute of limitations, the elements of the IIED claim and the elements of the assault and battery claims remain the same. Where the assault and battery claims are barred by the statute of limita-

HOLLOWAY v. WACHOVIA BANK AND TRUST CO.

[339 N.C. 338 (1994)]

tions and the IIED claim remains viable, full recovery in the IIED claim may be had for all damages proximately caused by defendant's conduct upon which the IIED claim rests.

**Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 4 et seq., 17.**

**Recovery by debtor, under tort of intentional or reckless infliction of emotional distress, for damages resulting from debt collection methods. 87 ALR3d 201.**

**Modern status of intentional infliction of mental distress as independent tort: "outrage." 38 ALR4th 998.**

4. **Intentional Infliction of Mental Distress § 2 (NCI4th)— repossession of automobile—summary judgment for defendants— forecast of severe emotional distress**

Summary judgment for defendants was partially correct on a claim for intentional infliction of mental distress arising from the repossession of an automobile on the ground that plaintiffs have not forecast evidence of severe emotional distress where defendants demonstrated with the introduction of the deposition testimony of plaintiff Hallie Holloway that she did not suffer severe and disabling emotional distress; while plaintiffs assert that proof that defendant behaved outrageously may self-evidently support a finding of severe emotional distress, any inference of emotional distress to be drawn from defendants' outrageous conduct is not enough to withstand the motion for summary judgment in light of the deposition testimony. However, summary judgment was improper for the remaining plaintiffs because defendants did not affirmatively demonstrate the absence of a genuine issue.

**Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 4 et seq., 17.**

**Recovery by debtor, under tort of intentional or reckless infliction of emotional distress, for damages resulting from debt collection methods. 87 ALR3d 201.**

**Modern status of intentional infliction of mental distress as independent tort: "outrage." 38 ALR4th 998.**

Justice WEBB did not participate in the consideration or decision of this case.

**HOLLOWAY v. WACHOVIA BANK AND TRUST CO.**

[339 N.C. 338 (1994)]

Appeal of right by defendants pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 109 N.C. App. 403, 428 S.E.2d 453 (1993), reversing a ruling by Barnette, J., declining to submit an issue of punitive damages to the jury, made at the 3 June 1991 Session of Superior Court, Durham County.

Plaintiffs' petition for discretionary review of the Court of Appeals' decision affirming summary judgment for defendants on plaintiffs' claims for intentional infliction of emotional distress entered by Currin, J., at the 24 July 1989 Session of Superior Court, Durham County, allowed on 29 July 1993. Heard in the Supreme Court 18 November 1993.

*Michaux and Michaux, by Eric C. Michaux, for plaintiff-appellant-appellees.*

*James T. Bryan, III, for defendant-appellant-appellee Jean Dawson.*

*Poe, Hoof & Reinhardt, by J. Bruce Hoof and James C. Worthington, for defendant-appellant-appellee Wachovia Bank & Trust.*

EXUM, Chief Justice.

This is an action filed 27 April 1988 seeking recovery under the Debt Collection Act, Chapter 75, Article 2, of the General Statutes, for the torts of assault, battery, and intentional infliction of emotional distress. The claims arise out of an attempt on 28 June 1986 by defendant Dawson, allegedly acting as the agent of defendant Wachovia Bank and Trust Company (Wachovia), to repossess a vehicle owned by plaintiff Hallie Holloway which she had financed through Wachovia. The conduct of Dawson allegedly took place in the presence of all four plaintiffs. Sue Holloway is the mother of Hallie Holloway, and both were adults at the time of the incident. Damien Holloway is the son of Hallie Holloway, and at the time of the incident he was four months old. Swanzett Holloway is Hallie Holloway's niece, and at the time of the incident she was ten years old. Wachovia answered and counterclaimed against Hallie Holloway on the underlying debt, ultimately obtaining default judgment on the counterclaim.

After a hearing, Judge Currin on 22 August 1989 dismissed the assault and battery claims of the adult plaintiffs on the ground of the one-year statute of limitations, N.C.G.S. § 1-54(3), dismissed the Debt

**HOLLOWAY v. WACHOVIA BANK AND TRUST CO.**

[339 N.C. 338 (1994)]

Collection Act claims of all plaintiffs except Hallie Holloway and allowed summary judgment for defendants on all plaintiffs' claims for intentional infliction of emotional distress.[1]

Hallie Holloway's Debt Collection Act claim, Damien Holloway's assault and battery claim and Swanzett Holloway's assault claim came on for trial before Judge Barnette and a jury at the 3 June 1991 Session of Superior Court, Durham County. At the close of plaintiffs' evidence, the court granted defendants' motion for a directed verdict as to the assault claims and the battery claim. The court denied plaintiffs' request to submit an issue and an instruction on punitive damages, apparently on the ground plaintiffs had not prayed for punitive damages in their complaint. The jury found that defendant Dawson committed "an unfair act of debt collection" in violation of the Debt Collection Act and awarded Hallie Holloway $1000, the maximum penalty then allowed by this Act. *See* 1977 Sess. Laws ch. 747, § 4.[2] The court's judgment directed that the $1000 be applied as an offset against Wachovia's default judgment for $1933.75 against Hallie Holloway.

Plaintiffs appealed to the Court of Appeals. The Court of Appeals, in addition to ruling on various aspects of the case not now before us, affirmed the dismissal of Damien Holloway's assault claim, reversed the dismissal of Damien Holloway's claim for battery and reversed the dismissal of Swanzett Holloway's claim for assault. It remanded these claims for a new trial. The Court of Appeals also ruled that on retrial of these claims plaintiffs were entitled to an issue on punitive damages, concluding that failure to include punitive damages in the complaint's prayer for relief was not fatal to their recovery when such damages were otherwise supported by the complaint's factual allegations and proof at trial. Judge Lewis dissented as to this aspect of the Court of Appeals' decision. The Court of Appeals unanimously affirmed the trial court's summary judgment for defendants on plaintiffs' claims for intentional infliction of emotional distress.

Defendants appealed the Court of Appeals' decision on the punitive damages issue, and we granted the plaintiffs' petition for discre-

1. A number of other rulings were made at various times by the trial court denying plaintiffs' motions to amend pleadings to assert new claims, to add a prayer for punitive damages and dismissing a new action by plaintiffs arising out of the same incident but asserting new theories of recovery. Inasmuch as the correctness of these rulings is not before us, we will not discuss them except as may be helpful in understanding our decisions on the substantive issues before us.

2. The Act was amended in 1991 to increase the maximum penalty to $2000. 1991 Sess. Laws ch. 68, § 1 (codified at N.C.G.S. § 75-56 (1994)).

tionary review of the Court of Appeals' decision on the intentional infliction of emotional distress issue. We denied plaintiffs' petition for discretionary review of the other decisions of the Court of Appeals.

I.

The evidence at trial showed the following:

On Saturday 28 June 1986 Hallie Holloway, along with her mother Sue, her four-month-old son Damien, and her ten-year-old niece Swanzett, drove from Timberlake to Roxboro to do some shopping and the family laundry. Hallie drove her car, which had been purchased with a loan from Wachovia Bank and Trust. Hallie was in default on some of her payments at this time.

At about 1:00 p.m. Jean Dawson, who was employed by Wachovia to repossess cars, drove through Roxboro on her way to Virginia. Plaintiffs were inside the launderette when Dawson saw Hallie's car outside. Dawson recognized the car as one assigned to her for repossession. Sue exited the launderette to place clothes in the car and Dawson asked her who owned the car. Sue replied that Hallie owned the car and then returned to the launderette. Dawson returned to her car, drove to a phone booth, and called for a tow truck. She then drove her car into a position impeding Hallie's car.

Hallie, carrying Damien, and Swanzett then exited the launderette. Dawson stopped them, identified herself as an employee of Wachovia, and said that she was going to repossess the car due to the default on the loan. Hallie complained that if the car was repossessed she would be stranded in Roxboro. Hallie then entered the car with Damien and ordered Swanzett into the back seat. Dawson followed Hallie to the car. She stood at the door and told Hallie that she, Hallie, could not leave with the car. Hallie protested, whereupon Dawson reached through the open window in an attempt to get the keys. A struggle ensued in which Dawson made contact with Hallie and Damien. Sue then emerged from the launderette with more clothes. Noticing the struggle, she wedged herself between the car and Dawson and asked, "What's going on?"

Dawson then went to her car and retrieved a .22 caliber blue steel Astra pistol. Brandishing the sidearm, she returned to Hallie's car. According to plaintiffs, Dawson pointed the gun at Hallie and ordered the plaintiffs to leave the car and remove their belongings. According to Dawson, she merely held the gun by her side, in a holster, due to her fear of the plaintiffs; thus according to Dawson she never pointed

the gun at any plaintiff. Sue, who was in the passenger seat, offered to pay the money owed on the loan if Dawson would allow them to leave. A Roxboro police officer drove by, which distracted Dawson. Hallie took this opportunity to back up and drive around Dawson's car, grazing Dawson's bumper in the process. Dawson took chase in her vehicle, but soon lost sight of the car.

II.

There are two issues presented on appeal: (A) Whether at retrial plaintiffs are entitled to an instruction on punitive damages, and (B) whether summary judgment was proper as to plaintiffs' claims for intentional infliction of emotional distress.

A.

[1] The Court of Appeals panel below reversed the trial court's directed verdict in favor of defendants on Damien's battery claim and Swanzett's assault claim. The majority of the panel then held that Damien and Swanzett could at retrial seek punitive damages even though they had not expressly requested punitive damages in their pleadings.[3] Judge Lewis dissented from this part of the opinion on the ground that the failure to plead specially punitive damages is fatal to the recovery of such damages at trial. The issue before us is what must be contained in the pleading to entitle a plaintiff to have submitted to the jury the issue of punitive damages. Essentially, we agree with the majority of the Court of Appeals panel on this issue.

The complaint alleged that Wachovia "by and through said defendant employee [Dawson] did violently, willfully, and intentionally assault the plaintiffs by displaying and aiming a firearm at the plaintiffs intending by such act to put plaintiffs in apprehension of an immediate harmful contact." It further alleged that Dawson "batter[ed] them by pressing her elbow, forearm and then upper arm . . . against the arm, leg and head of plaintiff Damien Lee Holloway in a forceful, aggressive and intentional manner . . . causing him to cry."

---

3. When the case was submitted to the jury the only issue to be decided was Hallie's claim under the Debt Collection Act. As that claim will not support an award of punitive damages, see *Pinehurst, Inc. v. O'Leary Brothers Realty, Inc.*, 79 N.C. App. 51, 63, 338 S.E.2d 918, 925, *disc. rev. denied*, 316 S.E.2d 378, 342 S.E.2d 896 (1986), the jury had before it no claim which would support an award of punitive damages. The panel thus was not reviewing the trial court's decision whether to submit an issue of punitive damages on Damien's and Swanzett's claims, but solely whether punitive damages could be sought at retrial.

## HOLLOWAY v. WACHOVIA BANK AND TRUST CO.

[339 N.C. 338 (1994)]

The complaint sought recovery for intentional infliction of emotional distress, assault, and violations of N.C.G.S. §§ 75-51 and 75-56, relating to threatening or coercive debt collection practices. In addition, plaintiffs Hallie and Damien alleged battery. The claims for relief did not specify any type of recovery. The prayer for judgment stated:

WHEREFORE, Plaintiffs pray the Court as follows:

1. That a judgment be entered in favor of each individual plaintiff against the defendant.

2. That each judgment amount assessed be increased by treble the amount fixed.

. . . .

5. For such other and further relief this Court may deem just and proper.

The complaint did not refer specifically to punitive damages.

We have twice stated in dictum that "it seems that punitive damages need not be specially pleaded by that name in the complaint." *Cook v. Lanier*, 267 N.C. 166, 172, 147 S.E.2d 910, 915 (1966); *Lutz Industries, Inc. v. Dixie Home Stores*, 242 N.C. 332, 344, 88 S.E.2d 333, 342 (1955). Although *Cook* and *Lutz Industries* predate our current Rules of Civil Procedure, we now affirm that dictum on this issue after examining it in light of our current Rules.

Rule 8(a) provides:

A pleading . . . shall contain [a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions . . . intended to be proved showing that the pleader is entitled to relief, and [a] demand for judgment for the relief to which he deems himself entitled. . . .

Rule 54(c) provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings."

Rules 8(a) and 54(c), when read together, reject any strict rule that a certain measure of damages must be specifically sought in the prayer for relief. Rule 54(c) clearly contemplates that a party may recover damages which are not expressly requested. Even where a party requests the wrong measure of damages, the court may grant relief to the party entitled regardless of the error in the pleading. *Port*

*Authority v. Roofing Co.*, 32 N.C. App. 400, 407-08, 232 S.E.2d 846, 852 (1977), *aff'd*, 294 N.C. 73, 240 S.E.2d 345 (1978) (plaintiff obtains relief even though complaint sought wrong measure of damages). The purpose of Rule 8(a) is to establish that the plaintiff will be entitled to some form of relief should he prevail on the claim raised by the factual allegations in his complaint; the purpose of Rule 54(c) is to provide plaintiff with whatever relief is supported by the complaint's factual allegations and proof at trial.

Further, as our rules are derived from the federal rules, which have been adopted by several other states as well, we look for guidance to authorities on the federal rules and decisions from other jurisdictions using the same rules. *See Dendy v. Watkins*, 288 N.C. 447, 452, 219 S.E.2d 214, 217 (1975). One authority has stated:

> Because of the second sentence of Rule 54(c), the demand for judgment required by Rule 8(a)(3) loses much of its significance once a case is at issue. If defendant has appeared and begun defending the action, adherence to the particular legal theories of counsel that may have been suggested by the pleadings is subordinated to the court's duty to grant the relief to which the prevailing party is entitled, whether it has been demanded or not.

10 Charles A. Wright, *Federal Practice and Procedure* § 2664 (2d ed. 1983) (footnotes omitted). "[T]he prayer for relief does not determine what relief ultimately will be awarded." *Id.* Instead, "the court should grant the relief to which a party is entitled, whether or not demanded in his pleading." 6 James W. Moore et al., *Moore's Federal Practice* ¶ 54.60 (2d ed. 1994); *see also* W. Brian Howell, Howell's *Shuford North Carolina Civil Practice and Procedure* § 8-3 (4th ed. 1992) ("So long as some demand for relief is made, it apparently is not crucial that the wrong relief has been demanded.").

Defendants cite two cases in support of their contention that a plaintiff must specifically plead punitive damages. In *Campbell v. Thornton*, 644 F. Supp. 103, 105 (W.D. Mo. 1986), the court implicitly held the plaintiff could not recover punitives which were not demanded in the pleadings. The court, however, proceeded to state, "It bears emphasis that the complaint herein did not contain a prayer for punitive damages *nor* did it even allege that the defendants had acted willfully, maliciously, or with callous disregard for the plaintiff's rights." *Id.* (emphasis in original). By contrast, plaintiffs in the case at bar alleged conduct committed "willfully." Defendants also cite *Olson v. Shinnohon Kisen K.K.*, 25 F.R.D. 7 (E.D. Pa. 1960). In that case the

issue was not decided on the pleadings; instead "the Court rest[ed] its decision basically upon the proposition that once the issues are settled in pre-trial proceedings and by a pre-trial order, the case shall go to trial on the issues there determined." *Id.* at 9.

Thus, based on our Rules and on the persuasive authorities cited, we hold that a plaintiff need not specially plead punitive damages as a prerequisite to recovering them at trial. Rule 54(c), however, does not render the pleadings meaningless. The most fundamental tenet of modern pleading rules is that the pleadings should give "sufficient notice of the claim asserted 'to enable the adverse party to answer and prepare for trial . . . and to show the type of case brought.' " *See Sutton v. Duke*, 277 N.C. 94, 102, 176 S.E.2d 161, 165 (1970) (quoting Moore's Federal Practice § 8.13 (2d ed. 1968)). The issue is thus not whether the plaintiff specifically demanded punitive damages, but whether "the complaint . . . gave sufficient notice of a claim . . . for punitive damages." *Henry v. Deen*, 310 N.C. 75, 85-86, 310 S.E.2d 326, 333 (1984).

Our decision is in accord with the majority of jurisdictions which have addressed this issue. It has been stated:

If the facts alleged by the plaintiff in an action for damages show that the wrong complained of was inflicted with malice, oppression, or other like circumstances of aggravation, exemplary or punitive damages may be recovered without being specially pleaded, although there is other authority that a high degree of specificity is required in pleading punitive damages. However, the plaintiff may specifically demand those damages. In other words, *it is not necessary to claim exemplary damages by name if the facts alleged are such as to warrant their assessment.*

22 Am. Jur. 2d *Damages* § 842 (1988) (footnotes omitted) (emphasis added). In *Guillen v. Kuykendall*, 470 F.2d 745, 748 (5th Cir. 1972), for example, the court held that "[i]t is not necessary to claim exemplary damages by specific denomination if the facts" support a claim for exemplary damages. *See also Behrens v. Raleigh Hills Hosp., Inc.*, 675 P.2d 1179, 1182 (Utah 1983) (holding that plaintiff "could claim punitive damages under Rule 54(c) [without having demanded them in the pleadings and] without a formal amendment to the pleadings"); 22 Am. Jur. 2d *Damages* § 842 n.82 (citing numerous cases).

We hold, therefore, that where a pleading fairly apprises opposing parties of facts which will support an award of punitive damages, they may be recovered at trial without having been specially pleaded.

**[2]** Applying this rule to the case before us, we conclude defendants were fairly apprised by the complaint of facts which would support an award of punitive damages at trial. The complaint alleged that Dawson intentionally pointed a gun at the plaintiffs in an attempt to intimidate them. It also alleged that Dawson reached into Hallie's vehicle and struggled with her, making contact with Damien and Hallie in the process. These are all intentional acts of the type giving rise to punitive damages. *See, e.g., Allred v. Graves*, 261 N.C. 31, 134 S.E.2d 186 (1964) (describing various assault and battery claims). *See Shugar v. Guill*, 304 N.C. at 338, 283 S.E.2d at 510 (in concluding that complaint was sufficient to support punitive damages, court emphasized that "there was sufficient information in the complaint from which defendant could take notice and be apprised of" the events underlying the claim for punitive damages); *Guillen*, 470 F.2d at 746, 748 (where plaintiff alleged that defendant shot him for drinking water from a well on plaintiff's father's land, the "complaint alleged malice and unwarranted excessive actions" and thus punitives were available even though not specially pleaded).

We note, too, that the three torts alleged in the complaint support punitive damages when accompanied by aggravation: assault, battery, and intentional infliction of emotional distress. *See, e.g., Shugar v. Guill*, 304 N.C. at 335, 283 S.E.2d at 509; *Wilson v. Pearce*, 105 N.C. App. 107, 121, 412 S.E.2d 148, 155, *disc. rev. denied*, 331 N.C. 291, 417 S.E.2d 72 (1992). Only the claim based on the Debt Collection Act would not support punitive damages. *See* N.C.G.S. § 75-16 (1988) (person injured by violation of Chapter 75 shall receive treble damages); *Pinehurst, Inc. v. O'Leary Brothers Realty, Inc.*, 79 N.C. App. 51, 63, 338 S.E.2d 918, 925, *disc. rev. denied*, 316 N.C. 378, 342 S.E.2d 896 (1986) (punitive damages not recoverable under Chapter 75). Therefore, the complaint fairly apprised defendants of facts which would support an award of punitive damages at trial. *Compare Warren v. Colombo*, 93 N.C. App. 92, 102, 377 S.E.2d 249, 255 (1989) (where punitives were not specifically sought in pleading, plaintiff could not ask for them at trial since his "allegation of willful and wanton conduct against [defendant] is buried among negligence allegations").

Other allegations in the complaint served to put defendants on notice of facts which would support an award at trial of punitive damages. The complaint alleged that Dawson assaulted plaintiffs by pointing the gun at them "violently" and "willfully" and that Dawson battered Damien in a "forceful" and "aggressive" manner. These words demonstrate the element of aggravation necessary to award

HOLLOWAY v. WACHOVIA BANK AND TRUST CO.

[339 N.C. 338 (1994)]

punitive damages for the torts of assault and battery. *See Hardy v. Toler,* 288 N.C. 303, 306, 218 S.E.2d 342, 345 (1975); Sam J. Ervin, Jr., *Punitive Damages in North Carolina,* 59 N.C. L. Rev. 1255 (1981). The word "willful," often used in conjunction with the word "wanton," is an established term of art alluding to conduct that supports an award of punitive damages. *See Bonaparte v. Fraternal Funeral Home,* 206 N.C. 652, 656, 175 S.E.2d 137, 139 (1934); *Robinson v. Seaboard System Railroad,* 87 N.C. App. 512, 519, 361 S.E.2d 909, 914 (1987), *disc. rev. denied,* 321 N.C. 474, 364 S.E.2d 924 (1988). Moreover, these words are unnecessary to establish a claim for assault or battery. *Myrick v. Cooley,* 91 N.C. App. 209, 215, 371 S.E.2d 492, 496, *disc. rev. denied,* 323 N.C. 477, 373 S.E.2d 865 (1988). The use of the words "violently," "willfully," "forceful," and "aggressive" thus tend to put defendants on fair notice of facts which would support an award of punitive damages at trial.

Defendants argue that "[b]ecause a plaintiff may not recover both punitive and treble damages in such a case, Plaintiff-Appellees' specific request for treble damages, and their seemingly deliberate omission of a claim for punitive damages, reasonably led [us] to assume that punitive damages were not sought in this particular case." While we agree with defendants that the whole pleading must be examined to determine whether defendants were fairly put on notice of a claim for punitive damages, we nevertheless find this contention to be without merit.

A plaintiff is not precluded from seeking both punitive and treble damages; only for purposes of an actual recovery must an election between the two be made. *United Laboratories v. Kuykendall,* 335 N.C. 183, 188 n.3, 437 S.E.2d 374, 377 n.3 (1993). That the pleadings seek one form of relief does not automatically preclude recovery of another not specifically requested. Also, plaintiffs clearly were not entitled to treble damages on their debt collection claim as such claims are exempt from the treble damages provisions of Chapter 75. N.C.G.S. § 75-56. The trial court in fact granted defendants' motion to strike the demand for treble damages from the complaint nearly two years before trial.

Defendants also emphasize that on two occasions plaintiffs unsuccessfully attempted to amend their complaint to seek punitive damages and that plaintiffs unsuccessfully attempted to file a second suit requesting punitive damages. Defendants assert that these actions "further confirmed [our] conclusion [that] [t]his case did not

involve a punitive damages issue." These proposed amendments and the second complaint, however, asserted only claims for "gross negligence" in Wachovia's hiring and retention of Dawson and violations of particular statutes. Plaintiffs never attempted to amend the complaint, nor bring a second complaint, to request punitive damages for the claims for assault, battery, and intentional infliction of emotional distress. Thus the denials of the motions to amend and the dismissal of the second suit had no bearing on whether plaintiffs would seek punitive damages at trial for the assault, battery, and intentional infliction of emotional distress claims.

Finally, defendants assert that they had not prepared the case to be tried as one for punitive damages; therefore, it would have been unfair to submit an issue on punitive damages. Having concluded the complaint fairly apprised defendants of facts strongly supportive of punitive damages, we are not persuaded by this argument. What issues are to be submitted at trial should be settled in advance of trial at the pretrial conference memorialized by a pre-trial order. *See* N.C. R. Civ. P. 16; General Rules of Practice for the Superior and District Courts, Rule 7.[4]

Read as a whole, the complaint fairly advised defendants of facts which would support an award of punitive damages, and thus plaintiffs are entitled to an issue on punitive damages for their claims to be tried at retrial.

B.

[3] We next address the Court of Appeals' decision affirming the order of the trial court granting summary judgment against plaintiffs on their claims for intentional infliction of emotional distress (IIED). The Court of Appeals reasoned that under *Dickens v. Puryear*, 302 N.C. 437, 276 S.E.2d 325 (1981), "the plaintiff must show that there was a threat of future harm." 109 N.C. App. at 412, 428 S.E.2d at 458. After reviewing the pleadings and depositions, the court concluded that plaintiffs had not alleged this element and that the forecast of evidence negated this element. Plaintiffs argue that the Court of Appeals' application of *Dickens* was error. Defendants argue that the Court of Appeals was correct in its reasoning; they further argue that summary judgment was proper since plaintiffs did not forecast evidence that they suffered severe emotional distress.

---

4. While the record before us in this case contains a pre-trial order, it refers to the parties' contentions as to the issues for trial by exhibit number. The exhibits are not part of the record before us.

## HOLLOWAY v. WACHOVIA BANK AND TRUST CO.

[339 N.C. 338 (1994)]

Rule 56 provides that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. R. Civ. P. 56(c). Summary judgment is appropriate where the movant proves that an essential element of the claim is nonexistent or that the opposing party cannot produce evidence to support an essential element of his claim. *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992). When the movant shows by either of these methods that there is no genuine issue of material fact, the non-movant, in order to avoid summary judgment against him, "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." N.C. R. Civ. P. 56(e).

The essential elements of a claim for intentional infliction of emotional distress are "1) extreme and outrageous conduct by the defendant 2) which is intended to and does in fact cause 3) severe emotional distress." *Dickens v. Puryear*, 302 N.C. at 452, 276 S.E.2d at 335.

The forecast of evidence before the trial court at the summary judgment hearing consisted of the following: The complaint alleged that Dawson, an agent of Wachovia, aimed a gun at all plaintiffs, causing them apprehension and severe mental suffering, and made physical contact with Damien and Hallie, causing them emotional trauma. The complaint also alleged that defendants' actions constituted an intentional infliction of emotional distress. Defendants' answer denied these allegations. Further, defendants submitted the deposition testimony of Hallie Holloway, which is set forth in material part later in this opinion.[5]

1.

Defendants' first argument in support of summary judgment on the IIED claims is that pursuant to our holding in *Dickens*, plaintiffs must allege and prove a threat of future harm committed by defend-

---

5. The transcript reveals that defendants also deposed Sue and Swanzett Holloway. While the record on appeal contains one page of Sue's deposition testimony relating to whether she perceived a future threat, it contains no more of Sue's deposition and none of Swanzett's deposition. Since the portions of the depositions which are discernable from the transcript contain no forecast of evidence relating to Sue's or Swanzett's alleged emotional distress, they are immaterial to our disposition of the summary judgment issue.

HOLLOWAY v. WACHOVIA BANK AND TRUST CO.

[339 N.C. 338 (1994)]

ants. Since the forecast of evidence at the summary judgment hearing demonstrates that there was no such threat, defendants argue, summary judgment for them on this claim is proper. This was the position taken by the Court of Appeals. For the following reasons, we disagree.

This position is based on a misreading of *Dickens. Dickens*, like the present case, involved claims for assault, battery and IIED where the statute of limitations barred the assault and battery claims. In addition, however, to defendants' various batteries causing physical injuries to plaintiff and defendants' threats of immediate harm communicated to plaintiff in *Dickens*, there was also some evidence of defendants' threats of future harm to the plaintiff. The primary holding of *Dickens* was this: Since an assault requires a threat of imminent offensive contact as opposed to a threat of future contact, "threats for the future are actionable, if at all, not as assaults but as intentional inflictions of emotional distress." *Id.* at 446, 276 S.E.2d at 331.

When assault and battery claims and an IIED claim arise out of the same conduct and the assault and battery claims are barred by the statute of limitations, *Dickens* did not hold that a threat of future harm is a necessary element required to sustain the IIED claim. It held rather that under these circumstances the threat of future harm is actionable, if at all, not as an assault claim but only as an IIED claim. *Dickens* did not alter the elements of an IIED claim; these elements remain the same notwithstanding the factual context out of which the claim arises. Even when the IIED claim arises from facts which would also sustain claims for assault and battery, which may or may not be barred by the statute of limitations, the elements of the IIED claim as do the elements of the assault and battery claims remain the same. Whether plaintiff may recover on any or all of these claims depends on the extent to which the elements of any or all of them may be proved.

When, however, the assault and battery claims are barred by the statute of limitations, as they were in *Dickens* and as they are in the instant case as to the adult plaintiffs, we thought it advisable in *Dickens* to try to delineate the extent to which a plaintiff's recovery of damages in the viable IIED claim might be barred because they derive exclusively from the assault, or the battery, or both. In an effort to sort out the possible recoveries available to a plaintiff whose assault and battery claims are barred by the statute of limitations but who has a viable claim for IIED arising out of the same incident as the assault and battery, we said:

**HOLLOWAY v. WACHOVIA BANK AND TRUST CO.**

[339 N.C. 338 (1994)]

Here much of the factual showing at the hearing related to assaults and batteries committed by defendants against plaintiff. The physical beatings and the cutting of plaintiff's hair constituted batteries. The threats of castration and death, being threats which created apprehension of immediate harmful or offensive contact, were assaults. Plaintiff's recovery for injuries, mental or physical, caused by these actions would be barred by the one-year statute of limitations.

The evidentiary showing on the summary judgment motion does, however, indicate that defendant Earl Puryear threatened plaintiff with death in the future unless plaintiff went home, pulled his telephone off the wall, packed his clothes, and left the state. The Court of Appeals characterized this threat as being "an immediate threat of harmful and offensive contact. It was a present threat of harm to plaintiff . . . ." 45 N.C. App. at 700, 263 S.E.2d at 859. The Court of Appeals thus concluded that this threat was also an assault barred by the one-year statute of limitations.

We disagree with the Court of Appeals' characterization of this threat. The threat was not one of imminent, or immediate, harm. It was a threat for the future apparently intended to and which allegedly did inflict serious mental distress; therefore it is actionable, if at all, as an intentional infliction of mental distress. *Wilson v. Wilkins, supra,* 181 Ark. 137, 25 S.W.2d 428; Restatement 31, Comment a, pp. 47-48.

The threat, of course, cannot be considered separately from the entire episode of which it was only a part. The assaults and batteries, construing the record in the light most favorable to the plaintiff, were apparently designed to give added impetus to the ultimate conditional threat of future harm. Although plaintiff's recovery for injury, mental or physical, directly caused by the assaults and batteries is barred by the statute of limitations, these assaults and batteries may be considered in determining the outrageous character of the ultimate threat and the extent of plaintiff's mental or emotional distress caused by it.

*Dickens,* 302 N.C. at 454-55, 276 S.E.2d at 336.

At this point we inserted a footnote which read:

We note in this regard plaintiff's statement in his deposition that "[i]t is not entirely [the future threat] which caused me all of my emotional upset and disturbance that I have complained

**HOLLOWAY v. WACHOVIA BANK AND TRUST CO.**

[339 N.C. 338 (1994)]

about. It was the ordeal from beginning to end." If plaintiff is able to prove a claim for intentional infliction of mental distress it will then be the difficult, but necessary, task of the trier of fact to ascertain the damages flowing from the conditional threat of future harm. Although the assaults and batteries serve to color and give impetus to the future threat and its impact on plaintiff's emotional condition, plaintiff may not recover damages flowing directly from the assaults and batteries themselves.

*Id.* at 455 n.11, 276 S.E.2d at 336 n.11.

While the footnote and, to a lesser extent, the accompanying text are not worded with optimum precision, properly understood this portion of *Dickens* means this: Where the assault and battery claims are barred by the statute of limitations and the IIED claim remains viable, full recovery in the IIED claim may be had for all damages proximately caused by defendant's conduct upon which the IIED claim rests. The only damages which may be barred are those damages which are recoverable, if at all, exclusively in the barred assault and the battery claims as, for example, damages resulting from certain physical injuries inflicted by the battery. The assault or the battery, or both, however, may amount to extreme and outrageous conduct which is intended to cause and which does cause severe emotional distress. If so, then they satisfy the elements of an IIED claim and all damages proximately flowing from plaintiff's severe emotional distress caused in turn by this conduct are recoverable. Such damages are not barred because they are proximately caused by conduct which also amounts to an assault or battery, or both, even when the assault and battery claims, themselves, are barred by the statute of limitations.

As *Dickens* does not require that plaintiffs allege and prove a threat of future harm in their claims for IIED, defendants' argument for summary judgment based on the lack of a threat of future harm is rejected.

2.

[4] We next address defendants' contention that summary judgment against plaintiffs was proper since plaintiffs have not forecast evidence of severe emotional distress. In *Waddle v. Sparks*, 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992), we stated that the severe emotional distress required for IIED is the same as that required for negligent infliction of emotional distress, which is:

**HOLLOWAY v. WACHOVIA BANK AND TRUST CO.**

[339 N.C. 338 (1994)]

any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so. [*Johnson v. Ruark Obstetrics & Gynecology Assoc.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990).]

Defendants contend that they are entitled to summary judgment on the ground that plaintiffs have not forecast evidence of severe emotional distress. As to plaintiff Hallie, we agree; as to the other plaintiffs, we disagree.

In support of their summary judgment motion, defendants submitted Hallie's deposition. The deposition contained the following exchange:

Q. Okay. You haven't lost any income from any job because of this incident have you?

A. No.

Q. You haven't had any medical expenses that are related to this incident?

A. No.

Q. You haven't had any medical treatment or psychological treatment or anything like that because of this incident?

A. No.

. . . .

Q. Now, since this incident occurred have you gone to see any psychiatrist or psychologist?

A. No.

Q. Have you gone to see any medical doctor about this incident?

A. No.

Q. Okay. Have you gone to see anybody for counseling, a minister or anybody at all?

A. No.

. . . .

**HOLLOWAY v. WACHOVIA BANK AND TRUST CO.**

[339 N.C. 338 (1994)]

Q.   Well, have you been emotionally upset or have you had any mental-type problem because of this incident?

A.   No.

We find that through introduction of this deposition testimony of plaintiff Hallie defendants demonstrated that an essential element of her claim was nonexistent. Specifically, defendants showed that Hallie did not suffer "severe and disabling" emotional distress.

Defendants' forecast of evidence on this point is similar to the forecast of evidence introduced by defendant in *Waddle*, in which we held summary judgment proper. In *Waddle* defendant's forecast of evidence showed plaintiff had not seen a psychiatrist or psychologist since more than ten years before the incidents. *Id.* at 85, 414 S.E.2d at 28. She had taken "nerve pills" after the incident, but that was for family-related stress. The only time she missed work during her employment with the defendant-employer related to family matters. Although the complaint alleged that she was continually upset and frequently cried, her deposition revealed only one such incident and that did not involve the defendant-supervisor. As here, plaintiff in *Waddle* forecast no evidence tending to show the existence of her severe emotional distress. "There is no forecast of any medical documentation of plaintiff's alleged 'severe emotional distress' nor any other forecast of evidence of 'severe and disabling' psychological problems within the meaning of the test laid down in *Johnson v. Ruark*." *Id.*

In an attempt to rebut defendants' forecast of evidence that the element of severe emotional distress was missing in Hallie's claim, plaintiffs assert, "Proof that the defendant behaved outrageously vis-a-vis plaintiff may be self-evident to support a finding that plaintiff suffered severe emotional distress." In support plaintiffs cite from the Restatement of Torts, "Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is itself important evidence that the distress has existed." Restatement (Second) of Torts § 46 cmt. j (1965). The Restatement, however, provides only that outrageous conduct may be some evidence of severe emotional distress, not that outrageous conduct can substitute for severe emotional distress. Any inference of emotional distress to be drawn from defendants' outrageous conduct is not enough to withstand the motion for summary judgment in light of Hallie's deposition testimony. We find the motion for summary judgment as to Hallie's claim for IIED controlled by our decision in

*Waddle* and affirm the decision of the Court of Appeals upholding the granting of summary judgment as to her claim.

As to plaintiffs Sue, Damien and Swanzett, however, summary judgment was improper. Defendants emphasize that "[t]he Plaintiff-Appellants in the case at bar did not forecast any such evidence [of severe emotional distress]." This may be true, but plaintiffs need not make such a forecast as defendants have not come forward with any documentation or other forecast of evidence required by Rule 56 to support a summary judgment as to plaintiffs Sue, Damien and Swanzett.[6] Rule 56(e) states:

> When a motion for summary judgment is made *and supported as provided in this rule,* an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. (emphasis added).

"Only after a moving party meets this burden must the nonmovant 'produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial.' " *Goodman v. Wenco Foods, Inc.,* 333 N.C. 1, 21, 423 S.E.2d 444, 454 (1992) (quoting *Collingwood v. G.E. Real Estate Equities,* 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989)); *see also Va. Electric Power Co. v. Tillett,* 80 N.C. App. 383, 385, 343 S.E.2d 188, 191 (1986) ("The burden rests on the movant to make a conclusive showing; until then, the non-movant has no burden to produce evidence."). "A defendant who moves for sum-

---

6. In their brief defendants assert that "the other Plaintiff-Appellants [other than Hallie] did not receive any medical treatment or experience any effects from the incident with Ms. Dawson." Defendants do not, however, cite to any support in the record for their proposition. We remind counsel for defendants that "[e]vidence or other proceedings material to the question presented may be narrated or quoted in the body of the argument, *with appropriate reference to the record on appeal* or the transcript of proceedings, or the exhibits." N.C. R. App. P. 28(b)(5) (emphasis added). We note that with regard to summary judgment against Hallie's claim defendants made appropriate references to the record.

We have, nevertheless, searched the record and are unable to find any support for defendants' contention. In this regard we emphasize that "review is solely upon the record on appeal and the verbatim transcript of proceedings, if one is designated." N.C. R. App. P. 9(a). Defendants also assert that "as the preceding portions of Hallie Holloway's deposition testimony show, the Plaintiff-Appellants never saw a psychiatrist or psychologist." This statement was made in reference to the deposition testimony reproduced in the text of this opinion. We cannot see, however, how Hallie's deposition testimony relates in any manner to the existence of severe emotional distress of the other plaintiffs.

mary judgment must prevail on the basis of his own affidavits and admissions made by the plaintiff, and unless the defendant's showing is sufficient, there is no burden on the plaintiff to file affidavits showing that he has a cause of action, or even to file counteraffidavits at all." 73 Am. Jur. 2d *Summary Judgment* § 15 (1974). Unlike the situation in *Waddle* and unlike the motion as to Hallie, defendants have not affirmatively demonstrated the absence of a genuine issue. Summary judgment was, therefore, improper as to plaintiffs Damien, Swanzett and Sue.

In sum, defendants have shown that summary judgment against Hallie on the claim for IIED was proper. They have not, however, shown that summary judgment was proper on the IIED claims of Swanzett, Damien and Sue. Thus at retrial these claims are to be tried along with Damien's battery claim and Swanzett's assault claim.

The issues for retrial are Damien's battery claim, Swanzett's assault claim, their claims for IIED and punitive damages, and Sue's claim for IIED and punitive damages. The decision of the Court of Appeals is affirmed in part, reversed in part and the case is remanded to that Court for further remand to the Superior Court, Durham County for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.

Justice Webb did not participate in the consideration or decision of this case.