An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1023

Filed 2 July 2025

Mecklenburg County, No. 22CVS000076-590

CHARLOTTE CHRISTIAN ASSEMBLY
OF THE END TIME MESSAGE, INC., Plaintiff,

v.

PAUL F. ROMANELLI AND DEBORAH J. WALDMAN,
KENNETH D. ROUGHEN, ADRIANA MARIA CLARK
AND JEFFREY FORD CLARK, VERNON B. JACKSON
AND LISA TURNER, BEVERLY EARL BARKSDALE, III
AND BEEBE S. BARKSDALE, ZACKERY JAMES MISIAK,
WILLIAM H. WETHERILL LAPINEL AND ELLIOT HEWSON
AKA ELLIOTT H. LAPINEL, HEWSON LAPINEL OWENS,
MICHAEL CRAIG LIVINGSTON, LEEVON MCKINNEY, JR.
and SHERRY LUCAS MCKINNEY, Defendants.

Appeal by plaintiff from order entered 27 February 2024 by Judge George C. Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 22 May 2025.

> *The McIntosh Law Firm, P.C., by Christopher P. Gelwicks, for plaintiff-appellant.*
>
> *Baucom, Claytor, Benton, Morgan & Wood, P.A., by Laura Budd, for defendant-appellees Paul F. Romanelli and Deborah J. Waldman.*
>
> *The Raynor Law Firm, by Ken Raynor, for defendant-appellees Vernon B. Jackson and Lisa Turner.*
>
> *Dozier Miller Law Group, by Adam S. Hocutt, for defendant-appellees Leevon McKinney, Jr. and Sherry Lucas McKinney.*

*Kenneth D. Roughen, pro se, no brief filed.*

*Jeffrey F. Clark, pro se, no brief filed.*

*Adriana M. Clark, pro se, no brief filed.*

*William H. Wetherill Lapinel, pro se, no brief filed.*

*Elliott H. Lapinel, pro se, no brief filed.*

*Hewson L. Owens, pro se, no brief filed.*

*Michael C. Livingston, pro se, no brief filed.*

FLOOD, Judge.

Plaintiff Charlotte Christian Assembly of the End Time Message, Inc., appeals from the trial court's order granting Defendants' motion for summary judgment. On appeal, Plaintiff argues the trial court erred in granting Defendants' motion for summary judgment because Plaintiff's and Defendants' restrictive covenant was no longer enforceable under North Carolina's Marketable Title Act, due to a substantial change within the community; and in the alternative, enforcement of the restrictive covenant would be inequitable. Upon review, we conclude that because there was no substantial change within the community, and the result would not be inequitable, the trial court properly granted Defendants' motion for summary judgment.

## I. Factual and Procedural Background

On 19 June 1957, Ruth Smith Lucas, who owned an approximately 162-acre

farm in Mecklenburg County (the "Original Tract"), subsequently sold 35 acres of the Original Tract to her daughter, Susannah Hewson, and son-in-law, H.C. Hewson. Lucas and the Hewsons executed an agreement (the "Original Agreement"), requiring the Original Tract to "be used for residential or agricultural purposes only" (the "Resident-Use Restriction").

Between 1981 and 1991, Lucas sold off certain portions from within the Original Tract, and Lucas and the Hewsons amended the Original Agreement four times through releases, to allow for specific non-residential or agricultural uses of the sold-off portions of the Original Tract property. First, on 30 October 1981, Lucas and the Hewsons amended the Original Agreement to release a certain sold-off portion of the Original Tract to Thompson Orphanage and Training Institute, Inc., to allow for construction of an orphanage. The release specifically stated: "This release shall not modify, limit[,] or in any way affect the continuing effectiveness of the [Resident-Use ]Restriction[], other than with respect to the Orphanage Parcel."

Second, on 12 August 1982, Lucas and the Hewsons amended the Original Agreement to allow St. Michael the Archangel Anglican Church, Inc., to use its purchased portion from within the Original Tract property for church, worship, and other religious purposes. Similar to the first amendment, the second release stated: "This instrument shall not modify, limit, or in any way adversely affect the continuing effectiveness of the [Resident-Use ]Restriction[] other than with respect to the church parcel."

Third, on 6 April 1984, Lucas and the Hewsons amended the Original Agreement to allow Mecklenburg County to use its purchased portion of property from within the Original Tract for a greenway.  This release stated: "Nothing herein shall be construed as a waiver by the undersigned to the right of enforcement of the provisions set forth in [the Original Agreement] as to any other property to which th[e] [Resident-Use ]Restriction[] appl[ies], except as previously released by other recorded documents."

Fourth, and finally, on 20 August 1991, Lucas and the Hewsons amended the Original Agreement to allow the city of Charlotte to use its purchased portion of property from within the Original Tract for a fire station.  This final release stated: "Except as expressly amended hereby . . . and other amendments of record, the original [Resident-Use Restriction] provided in the [Original Agreement] shall remain in full force and effect with reference to all of the property originally subjected to the [Resident-Use Restriction] other than the above-mentioned property previously conveyed[.]"

On 29 June 2020, Plaintiff, a non-profit corporation, purchased real property within the Original Tract subject to the Resident-Use Restriction, with the intention to build a church.  Plaintiff then sought releases of the Resident-Use Restriction in the Original Tract from all the other property owners who had purchased plots from within the Original Tract—collectively, Defendants.  Although Defendants Leevon and Sharon McKinney released Plaintiff, they rescinded their release five months

later after they observed Plaintiff beginning construction of the church, before Plaintiff received releases from the other property owners.

In January 2022, after Defendants did not give releases to Plaintiff, Plaintiff filed suit in the trial court, requesting both preliminary and permanent injunctions to continue building the church, and seeking declaratory relief that the Original Agreement was no longer enforceable or, in the alternative, contending the enforcement would be inequitable. Plaintiff later amended its complaint, but it continued to request the same reliefs.

On 16 February 2023, while litigation was ongoing, the city of Charlotte issued Plaintiff a Stop Work Order and a Zoning Notice Violation, requiring Plaintiff to "obtain all applicable permits prior to resuming work." Defendants filed a motion for summary judgment on 12 January 2024, claiming Plaintiff's property was subject to the Resident-Use Restriction, and thus Plaintiff could not build a church. The trial court granted Defendants' motion on 27 February 2024. Plaintiff timely appealed on 26 March 2024. Defendant subsequently filed a motion to dismiss Plaintiff's appeal for Plaintiff's failure to timely settle or file a Record on Appeal, pursuant to Rule 12(a) of the North Carolina Rules of Appellate Procedure.

## II. <u>Jurisdiction</u>

This Court has jurisdiction over an appeal from a final judgment from a superior court, pursuant to N.C.G.S. § 7A-27(b)(1) (2023).

As a preliminary matter, Defendants have moved to dismiss Plaintiff's appeal

for Plaintiff's failure to settle or file a Record on Appeal within the time period required by Rule 12(a) of the North Carolina Rules of Appellate Procedure.

Under Rule 12(a), "[t]he appellant must file the record on appeal no later than fifteen days after it has been settled by any of the procedures provided in Rule 11 or Rule 18." N.C.R. App. P. 12(a). We also note, although Defendants do not raise this issue in their motion to dismiss, Plaintiff failed to provide a statement of grounds for appellate jurisdiction, as required by Rule 28(b)(4) of the North Carolina Rules of Appellate Procedure. *See* N.C.R. App. P. 28(b)(4) ("An appellant's brief shall contain, under appropriate headings and in the form prescribed by Rule 26(g) . . . [a] statement of the grounds for appellate review.").

Our Supreme Court has held that, generally, "parties who default under the [appellate] rules ordinarily forfeit their right to review on the merits." *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 194 (2008). The appellate rules, however, "are devised to promote the ends of justice, not to defeat them[,]" and thus, "noncompliance with the appellate rules does not, ipso facto, mandate dismissal of an appeal." *Id.* at 194 (citation omitted). "Our cases indicate that the occurrence of default under the appellate rules arises primarily from the existence of one or more of the following circumstances: (1) waiver occurring in the trial court; (2) defects in appellate jurisdiction; and (3) violation of nonjurisdictional requirements." *Id.* at 194.

The North Carolina Rules of Appellate Procedure specifically state that "[t]hese rules shall not be construed to extend or limit the jurisdiction of the courts of

the appellate division as that is established by law," and thus, these rules are nonjurisdictional requirements. N.C.R. App. P. 1(c).

Nonjurisdictional requirements are "designed primarily to keep the appellate process flowing in an orderly manner[,]" and "a party's failure to comply with nonjurisdictional rule requirements normally should not lead to dismissal of the appeal." *Dogwood Dev. & Mgmt. Co., LLC*, 362 N.C. at 198 (citation omitted) (cleaned up). If the party's violation rises to the level of a "substantial failure" or "gross violation," however, then the appellate court may impose sanctions. *See* N.C.R. App. P. 25(b) and 34(b). If the violation does not rise to such a level, then "the appellate court should simply perform its core function of reviewing the merits of the appeal to the extent possible." *Dogwood Dev. & Mgmt. Co., LLC*, 362 N.C. at 199.

To determine whether a party's violation rises "to the level of a substantial failure or gross violation, th[is C]ourt may consider, among other factors, whether and to what extent the noncompliance impairs the court's task of review and whether and to what extent review on the merits would frustrate the adversarial process." *Id.* at 200. "The court may also consider the number of rules violated, although in certain instances noncompliance with a discrete requirement of the rules may constitute a default precluding substantive review." *Id.* at 200; *see, e.g.,* N.C.R. App. P. 28(b)(6) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned."). "Noncompliance with the rules falls along a continuum, and the sanction imposed

should reflect the gravity of the violation[,]" and "only in the most egregious instances of nonjurisdictional default will dismissal of the appeal be appropriate." *Id.* at 199–200.

Here, although Plaintiff failed to timely file the Record on Appeal pursuant to Rule 12(a) and failed to include a statement of grounds for appellate review pursuant to Rule 28(b)(4), we have not been impaired by these violations of our task to review the claims, nor have Defendants claimed the review of merits will be frustrated. *See id.* at 200. Therefore, we decline to impose sanctions, deny Defendants' motion to dismiss, and therefore proceed to the merits of Plaintiff's appeal. *See id.* at 199.

### III. <u>Standard of Review</u>

This Court reviews de novo a trial court's granting of a motion for summary judgment. *See Davis & Taft Architecture, P.A. v. DDR-Shadowline, LLC*, 268 N.C. App. 327, 332 (2019). "Under the de novo standard of review, th[is] Court considers the matter anew and freely substitutes its own judgment." *Sound Rivers, Inc. v. N.C. Dep't of Env't Quality, Div. of Water Res.*, 271 N.C. App. 674, 695 (2020).

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). "An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from

prevailing in the action." *Koontz v. Winston-Salem*, 280 N.C. 513, 518 (1972). The issue is genuine "if it may be maintained by substantial evidence." *Id.* at 518. "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *Bartley v. High Point*, 381 N.C. 287, 292 (2022). "Summary judgment is appropriate where the movant proves that an essential element of the claim is nonexistent or that the opposing party cannot produce evidence to support an essential element of his claim." *Holloway v. Wachovia Bank & Tr. Co.*, 339 N.C. 338, 351 (1994).

### IV. <u>Analysis</u>

On appeal, Plaintiff argues the trial court erred in granting Defendants' motion for summary judgment. Specifically, Plaintiff contends: (A) the Resident-Use Restriction is no longer enforceable under the Marketable Title Act, due to a substantial or radical change in the community, and such change is a question of fact to be determined at trial; and in the alternative, (B) enforcement of the Resident-Use Restriction would be inequitable. We address each argument, in turn.

### A. Marketable Title Act

Plaintiff first argues that the Resident-Use Restriction is no longer enforceable under the Marketable Title Act. Specifically, Plaintiff contends there has been substantial change in the community of the Original Tract to warrant termination of the Resident-Use Restriction. We disagree.

North Carolina's Marketable Title Act provides, "[a] marketable record title

shall be free and clear of all rights, estates, interests, claims or charges whatsoever, the existence of which depends upon any act, title transaction, event or omission that occurred prior to such 30-year period." N.C.G.S. § 47B-2(c) (2023). This 30-year time limit does not apply, however, to "[c]ovenants applicable to a general or uniform scheme of development which restrict the property to residential use only." N.C.G.S. § 47B-3(13) (2023); *see also Dill v. Loiseau*, 263 N.C. App. 468, 471 (2019) (explaining that a general or uniform scheme of development is created where "an owner of a tract of land subdivides it and conveys distinct parcels to separate grantees, imposing common restrictions upon the use of each parcel pursuant to a general plan of development") (citation omitted). The residential-use exception of the Marketable Title Act may be terminated, however, "when changes within the covenanted area are so radical as practically to destroy the essential objects and purposes of the agreement." *Dill*, 263 N.C. App at 473 (citation omitted).

Our Supreme Court has stated that "[w]hether the growth and general development of an area represents such a substantial departure from the purposes of its original plan as equitably to warrant removal of restrictions formerly imposed is a matter to be decided in light of the specific circumstances of each case." *Hawthorne v. Realty Syndicate, Inc.*, 300 N.C. 660, 667 (1980). The departure changes "must take place within the covenanted area," *see Tull v. Drs. Bldg., Inc.*, 255 N.C. 23, 38 (1961) (citation omitted), and where those changes "represent no more than minor intrusions upon the quiet enjoyment of an area otherwise residential in nature," there

is no radical change, *see Hawthorne*, 300 N.C. at 667 (holding that violations of a residential covenant by the development of a public library and a bank branch office did not constitute a radical change in a residential area). *See also Tull,* 255 N.C. at 39-40 (concluding that the use of six lots in a residential subdivision as parking space for an office building was not "such a radical or fundamental change or substantial subversion as practically to destroy the essential objects and purposes of the restriction agreement"); *Williamson v. Pope*, 60 N.C. App. 539, 544 (1983) (holding that a residential covenant remained enforceable despite the fact that eleven out of sixty-nine blocks were used for commercial purposes).

Further, "[c]ourts generally enforce restrictive covenants as [they] would any other valid contractual relationship." *Gouch v. Rotunno*, 291 N.C. App. 7, 10 (2023). Our Supreme Court has explained that "[c]ontractual relations do not disappear as circumstances change[,]" and courts are "bound to give effect to the contract unless changed conditions within the covenanted area, acquiesced in by the owners to such an extent as to constitute a waiver or abandonment, is made to appear." *Tull*, 255 N.C. at 40.

Plaintiff relies solely on *Medearis v. Trs. of Meyers Park Baptist Church,* for the proposition that the four non-residential properties in the Original Track are enough to show that there has been a radical change in the residential area. 148 N.C. App. 1, 9 (2001). In *Medearis*, this Court concluded there was a radical change in a residential area where half of the properties—six out of twelve—were used for

commercial purposes without having obtained any waivers or releases; four of the properties were vacant; and the other two properties, together, shared one residential structure. *Id*. at 9. Plaintiff claims in its brief that, like the residential area in dispute in *Medearis*, "*numerous* properties within the [Original Tract] are no longer in compliance with the [R]esidential-[U]se [R]estriction, with *many* lots being used for non-residential purposes."

Plaintiff, however, admits that no properties in the Original Tract violate the Resident-Use Restriction, as "[a]ll non-residential property [*sic*] have been released from the [Resident-Use Restriction] allowing them to use their property for non-residential purposes." Of the properties sold from within the Original Tract, only four are non-residential—an orphanage, a fire station, a church, and a greenway—and the remaining sixteen properties in the Original Tract are residential or undeveloped. Unlike the owners in *Medearis*, who obtained no such releases or waivers for their properties that were used for non-residential purposes, each of the non-residential properties here obtained releases from Lucas and the Hewsons, *see id.* at 9; thus, there is no violation that has been acquiesced to by Defendants, *see Tull*, 255 N.C. at 40, for this Court to consider in determining whether a violation of a residential use agreement has "destroy[ed] the essential objects and purposes of the agreement[,]" *see Dill*, 263 N.C. App. at 473.

Because the four non-residential use properties within the Original Tract do not "destroy the essential objects and purposes of the [Original A]greement," *see Dill*,

263 N.C. App. at 473, the Resident-Use Restriction remains enforceable under the Marketable Title Act, *see Gouch*, 291 N.C. App. at 10, and there is no genuine issue of fact to be determined at trial, *see Holloway*, 339 N.C. at 351.

### B. Equity

Plaintiff argues alternatively that enforcing the Resident-Use Restriction would be inequitable. Plaintiff contends that "the lack of enforcement against prior violations demonstrates a tacit acknowledgment by the landowners that the covenant is no longer viable or necessary." We disagree.

Our Supreme Court has held that "[t]hose who purchase property subject to restrictive covenants must assume the burdens as well as enjoy the benefits, for equity does not grant relief against a bad bargain voluntarily made and unbreached." *Vernon v. R. J. Reynolds Realty Co.*, 226 N.C. 58, 61 (1946).

As previously discussed, Plaintiff admits that no properties in the Original Tract violated the Resident-Use Restriction, and that "[a]ll non-residential property [*sic*] have been released from the [Resident-Use Restriction] allowing them to use their property for non-residential purposes." Accordingly, we conclude that enforcing the Resident-Use Restriction would not result in inequity where there are no prior violations, and thus, the trial court did not err in granting summary judgment to Defendants. *See id.* at 61; *Holloway*, 339 N.C. at 351.

### V. <u>Conclusion</u>

Upon review, we conclude the Original Agreement's Resident-Use Restriction

remains enforceable where there has been no substantial change in the community, nor would the enforcement of that restriction lead to an inequitable result where there are no prior violations of the Original Agreement. We therefore affirm the trial court's order.

AFFIRMED.

Judges STADING and MURRY concur.

Report per Rule 30(e).