IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-460

Filed: 20 December 2016

Cumberland County, No. 14 CVS 5311

HARRY A. WILEY and GERALD D. GILMAN, Plaintiffs,

v.

L3 COMMUNICATIONS VERTEX AEROSPACE, LLC, Defendant.

Appeal by defendant from judgment entered 17 September 2014 by Judge Lucy N. Inman, order entered 23 January 2015 by Judge Kendra D. Hill, and judgment entered 9 October 2015 and order entered 13 November 2015 by Judge Claire V. Hill in Cumberland County Superior Court. Cross-appeal by plaintiffs from order entered 9 October 2015 by Judge Kendra D. Hill in Cumberland County Superior Court. Heard in the Court of Appeals 3 October 2016.

*Yarborough, Winters & Neville, P.A., by Garris Neil Yarborough and H. Addison Winters, and Phelps Dunbar LLP, by M. Nan Alessandra and Robert M. Kennedy, Jr., for defendant-appellant/cross-appellee.*

*Ryan McKaig, Lee Tart Malone, and Robert A. Buzzard for plaintiffs-appellees/cross-appellants.*

DIETZ, Judge.

Plaintiffs Harry Wiley and Gerald Gilman secured a default judgment against Defendant L3 Communications Vertex Aerospace, LLC after the company mistakenly missed its deadline to respond to the complaint. The trial court later set aside the

damages portion of its award and held a trial on damages. The jury awarded compensatory and punitive damages to both Wiley and Gilman, totaling more than $750,000 each.

As explained below, we affirm in part and vacate in part. We hold that Gilman lacked standing to pursue his claims because he failed to disclose the claims in his pending bankruptcy proceeding. Consistent with other courts that have addressed this issue, we conclude that North Carolina's standing principles do not permit a Chapter 13 debtor to pursue a claim that the debtor concealed from the bankruptcy estate.

We affirm the award of compensatory damages to Wiley, but vacate the award of punitive damages. The complaint did not allege any aggravating factors supporting an award of punitive damages under Rule 9(k) of the Rules of Civil Procedure. Indeed, the complaint did not even contain the words "punitive damages" in the allegations or prayer for relief, much less an articulation of the grounds required by the rule. Accordingly, as explained more fully below, we vacate in part, affirm in part, and remand for entry of a new judgment consistent with this opinion.

**Facts and Procedural History**

On 14 July 2014, Plaintiffs Harry Wiley and Gerald Gilman filed a joint complaint against their former employer, Defendant L3 Communications Vertex Aerospace, LLC, with each asserting claims for discrimination based on age, physical

ability, and race. Gilman also asserted a claim for violation of the North Carolina Wage and Hour Act. Plaintiffs served L3 with a summons and the complaint on 17 July 2014.

L3 failed to timely file an answer or other responsive pleading. On 21 August 2014, Wiley and Gilman moved for entry of default. That same day, the clerk entered a default against L3.

On 8 September 2014, Wiley and Gilman moved for default judgment. On 15 September 2014, their motion for default judgment came on for hearing. L3 did not appear at the hearing.

On 17 September 2014, the trial court granted the motion for default judgment. The trial court awarded Wiley $391,274.44 in compensatory damages and $1,173,823.32 in punitive damages. The court awarded Gilman $727,525.62 in compensatory damages and $2,182,576.86 in punitive damages.

On 16 October 2014, L3 moved to set aside the entry of default and default judgment. On 23 January 2015, the trial court denied L3's request to set aside the entire judgment, but granted the motion with respect to damages and scheduled a trial on damages.

On 21 September 2015, the jury awarded Wiley $273,353.48 in compensatory damages and $500,000.00 in punitive damages. It awarded Gilman $279,180.00 in

compensatory damages and $500,000.00 in punitive damages. On 9 October 2015, the trial court entered written judgment on the jury's verdict.

L3 timely moved for judgment notwithstanding the verdict or, alternatively, a new trial. The trial court denied L3's post-trial motions.

L3 timely appealed. Wiley and Gilman timely cross-appealed.

## Analysis

Both parties appeal from various trial court orders and judgments throughout this case. We first address several jurisdictional arguments asserted by L3, and then turn to the parties' challenges to the trial court's rulings throughout the default proceedings.

### I. Gilman's Failure to Disclose His Claim to the Bankruptcy Court

L3 argues that Gilman lacked standing to bring the claims asserted in the complaint because he had a pending bankruptcy and failed to inform the bankruptcy court of the existence of his legal claims. As explained below, we agree.

Standing is a jurisdictional issue. *Union Grove Mill. & Mfg. Co. v. Faw*, 109 N.C. App. 248, 251, 426 S.E.2d 476, 478, *aff'd*, 335 N.C. 165, 436 S.E.2d 131 (1993). "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple ex rel. Apple v. Commercial Courier Exp., Inc.,* 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (2005). A defect in subject matter jurisdiction cannot be waived by a party's failure to appear. *Hart v. Thomasville*

*Motors, Inc.*, 244 N.C. 84, 90, 92 S.E.2d 673, 678 (1956); *Matter of Triscari Children*, 109 N.C. App. 285, 288, 426 S.E.2d 435, 437 (1993). Thus, if Gilman lacked standing, the trial court had no power to enter judgment in his favor, notwithstanding L3's default.

We thus turn to L3's argument that Gilman lacked standing because of his failure to notify the bankruptcy court of his claims. Gilman's causes of action arose when L3 terminated him on 11 April 2013. Gilman petitioned for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of North Carolina on 10 January 2014. Because Gilman's claims existed when he petitioned for bankruptcy, they are the property of the bankruptcy estate and Gilman was required by law to disclose the claims to the estate. *See* 11 U.S.C. §§ 541, 1007(h), 1306(a). Gilman did not properly disclose these claims to the bankruptcy court until after the jury entered its verdict.

In a Chapter 13 bankruptcy, both the debtor and the trustee of the bankruptcy estate have concurrent standing to bring non-bankruptcy causes of action belonging to the estate. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 343 (4th Cir. 2013). This concurrent standing results from the special character of a Chapter 13 bankruptcy, in which the debtor retains possession of the property comprising the bankruptcy estate and is permitted to use that property in various ways. 11 U.S.C. §§ 363, 1303, 1306(b), 1322.

But the fact that debtors have concurrent standing to bring claims in the Chapter 13 context does not mean that we can ignore Gilman's failure to disclose the claims in his bankruptcy proceeding. As the Fourth Circuit acknowledged in *Wilson*, although a Chapter 13 debtor has standing to bring such claims, the debtor does so "on behalf of the estate" and "for the benefit of the estate." *Wilson*, 717 F.3d at 343–44.

This special, vicarious nature of the debtor's standing leads us to conclude, as other courts have, that the debtor's standing is conditional on having properly disclosed his claims in the bankruptcy proceeding. *Cowling v. Rolls Royce Corp.*, No. 1:11-CV-01719-JMS, 2012 WL 4762143, at *4 (S.D. Ind. Oct. 5, 2012) (unpublished); *Calvin v. Potter*, No. 07 C 3056, 2009 WL 2588884, at *3 (N.D. Ill. Aug. 20, 2009) (unpublished); *Robson v. Tex. E. Corp.*, 833 N.E.2d 461, 473 (Ind. Ct. App. 2005). As these courts reasoned, disclosing the claim in the bankruptcy proceeding is a necessary prerequisite to pursuing a claim on behalf of the estate. Without disclosing the claim, the bankruptcy court cannot factor that potential claim (and possible recovery) into any repayment plan, and the bankruptcy trustee cannot exercise its authority to evaluate the debtor's actions and determine if it must intervene to ensure the litigation is resolved in the best interests of the estate. We agree with this reasoning and hold that, when a debtor has concealed the existence of a potential legal claim in a Chapter 13 bankruptcy proceeding, the debtor cannot be pursuing

that claim "on behalf of or for the benefit of her bankruptcy estate" and thus lacks standing under North Carolina law. *See Calvin*, 2009 WL 2588884, at *3.

This outcome also is consistent with our State's strict rules concerning prerequisites to proper legal standing when suing on behalf of others. For example, a homeowner's association lacks standing, even in an actual controversy at the heart of the association's representative role, if it failed to first obtain authority to sue under its bylaws. *Willowmere Cmty. Ass'n, Inc. v. City of Charlotte*, __ N.C. App. __, __, __ S.E.2d __, __ (2016). Similar rules apply to those suing on behalf of a corporation. *See Anderson v. SeaScape at Holden Plantation, LLC*, __ N.C. App. __, __, 773 S.E.2d 78, 88 (2015). We see no reason why we should depart from this standing precedent for debtors suing on behalf of the bankruptcy estate.

Accordingly, we hold that Gilman lacked standing to litigate these claims because he pursued it without properly disclosing it in his bankruptcy proceeding. As a result, the trial court lacked subject matter jurisdiction to adjudicate the claim. *See Estate of Apple*, 168 N.C. App. at 177, 607 S.E.2d at 16.

"Where there is no jurisdiction of the subject matter the whole proceeding is void ab initio and may be treated as a nullity anywhere, at any time, and for any purpose." *High v. Pearce*, 220 N.C. 266, 271, 17 S.E.2d 108, 112 (1941). Accordingly, we vacate the judgment and award in Gilman's favor.

## II.    Application of Mandatory Arbitration Agreement

L3 next argues that the trial court lacked jurisdiction to enter the default judgment because Wiley signed an arbitration agreement that governed any claims concerning his employment.  L3 contends that, under the arbitration agreement, the court lacked authority to litigate these disputes.

This argument is foreclosed by precedent from this Court holding that application of an arbitration clause is not a jurisdictional issue and can be waived by failure to timely invoke it.  *Blankenship v. Town and Country Ford, Inc.*, 155 N.C. App. 161, 163, 574 S.E.2d 132, 133–34 (2002).

In *Blankenship*, the defendant argued "that the trial court erred in denying its motion to set aside the default judgment because the trial court lacked jurisdiction since the parties were subject to mandatory arbitration with respect to issues raised in plaintiffs' complaint."  *Id.* at 166, 574 S.E.2d at 135.  This Court rejected that argument, holding that the arbitration agreement was binding on the court only if the defendant appeared in court and invoked it:

> Arbitration pursuant to a valid agreement may be compelled by a court only upon application by a party to the agreement.
>
> Plaintiffs chose to file suit against defendant rather than seek arbitration pursuant to the agreement.  It was incumbent upon defendant to assert its right to arbitrate.  Because defendant failed to assert its right to arbitrate, this Court is not compelled to enforce the arbitration agreement.  Moreover, we hold that the trial court did not

err in denying the motion to set aside the default judgment
based on the existence of an arbitration agreement.

*Id.* at 166–67, 574 S.E.2d at 135 (citations omitted).

This case is indistinguishable from *Blankenship*. Because L3 did not timely appear in court and invoke the arbitration agreement to compel arbitration, the trial court did not err in entering judgment notwithstanding the parties' agreement to arbitrate this dispute.

## III. Decision to Set Aside Default Judgment on Damages

Having addressed these jurisdictional arguments, we turn to the parties' challenges to the trial court's rulings throughout the default proceedings.

First, Wiley argues that the trial court erred by setting aside the damages portion of the court's initial default judgment under Rule 60(b). Wiley focuses his argument on Rule 60(b)(6), and we thus begin our analysis there, although the trial court's order did not specify the particular provision of Rule 60(b) on which it relied.

Wiley argues that Rule 60(b)(6) cannot support the trial court's ruling because L3 failed to satisfy either of the first two prongs of the three-part test applicable to motions under Rule 60(b)(6). As explained below, the trial court was well within its sound discretion in allowing relief under Rule 60(b)(6).

"A trial court's decision to grant or deny a motion to set aside an entry of default and default judgment is discretionary. Absent an abuse of that discretion, this Court will not reverse the trial court's ruling." *Basnight Const. Co. v. Peters &*

*White Const. Co.*, 169 N.C. App. 619, 621, 610 S.E.2d 469, 470 (2005). "[W]e only find abuse of discretion where the trial court's judgment is manifestly unsupported by reason." *Bodie Island Beach Club Ass'n, Inc. v. Wray*, 215 N.C. App. 283, 290, 716 S.E.2d 67, 74 (2011).

To qualify for relief under Rule 60(b)(6), a movant must satisfy a three-part test: "(1) extraordinary circumstances exist, (2) justice demands the setting aside of the judgment, and (3) the defendant has a meritorious defense." *Gibby v. Lindsey*, 149 N.C. App. 470, 474, 560 S.E.2d 589, 592 (2002). Wiley does not argue that L3 lacks a meritorious defense. Thus, we limit our analysis to the first two prongs of the test.

This Court previously has recognized that the size of a default judgment award is a relevant factor to consider when determining whether extraordinary circumstances exist and whether justice would be best served by affording relief from judgment. *See Anderson Trucking Serv., Inc. v. Key Way Transp., Inc.*, 94 N.C. App. 36, 43, 379 S.E.2d 665, 669 (1989).

Here, the size of the judgment was quite large, totaling well over $4 million. Moreover, as explained in Part VI below, that judgment included a large award of punitive damages, which were not even requested in the complaint.

Finally, L3 provided an explanation for why it failed to timely respond to the complaint and, although the trial court ultimately chose to uphold the default

judgment on liability, L3's conduct in the case and its innocent explanation for why it missed the deadline readily provide a reasonable basis for the court to set aside the default judgment on damages. Accordingly, we reject Wiley's argument and hold that, under the deferential standard of review, the trial court's decision was not an abuse of discretion. *See Wray*, 215 N.C. App. at 290, 716 S.E.2d at 74.

## IV. L3's Motion to Set Aside Entry of Default and Default Judgment

Next, L3 asserts several challenges to the trial court's initial entry of default and default judgment and the court's denial of its motion to set aside the default. As explained below, we must reject these arguments under the applicable, narrow standard of review.

A trial court's decision to enter a default judgment, as well as a clerk or lower court's entry of default, are both reviewable for abuse of discretion. *Lowery v. Campbell*, 185 N.C. App. 659, 665, 649 S.E.2d 453, 456 (2007), *aff'd per curiam*, 362 N.C. 231, 657 S.E.2d 354 (2008). The decision to grant or deny a motion to set aside a default judgment likewise is reviewed for abuse of discretion. *Basnight Const. Co.*, 169 N.C. App. at 621, 610 S.E.2d at 470. As noted above, "we only find abuse of discretion where the trial court's judgment is manifestly unsupported by reason." *Wray*, 215 N.C. App. at 290, 716 S.E.2d at 74. As a result, "[t]his Court seldom has found an abuse of discretion by the trial court in failing to set aside a default judgment." *Bailey v. Gooding*, 60 N.C. App. 459, 466, 299 S.E.2d 267, 271 (1983).

**A. Attachment of Verifications at Default Judgment Hearing**

L3 first argues that the trial court erred by entering the default judgment because Wiley amended the complaint at the default judgment hearing, thus reopening L3's time to file a responsive pleading. Specifically, at the default judgment hearing (where L3 was not present), the following exchange occurred between Wiley's counsel and the trial court:

> MR. BUZZARD: We have got copies of the affidavits that are in the binder that we handed up, which Ms. Malone has copies to file.
>
> MS. MALONE: And also the verifications for the complaint.
>
> THE COURT: Well that's what I was going to say—
>
> MS. MALONE: They were signed the date, or prior to the filing to [*sic*] the complaint.
>
> THE COURT: Okay.
>
> MS. MALONE: I had just held those in my file, but I think I should probably put them in the file.
>
> THE COURT: Yes. You can hand those up, and in light of the default all allegations in the complaint are deemed admitted and insofar as they are verified.
>
> MS. MALONE: That was a filed copy and also a copy of the files.
>
> THE COURT: And have been verified and can be treated as affidavits.

L3 argues that, by adding the verification pages to the complaint, Wiley amended the complaint under Rule 15 of the Rules of Civil Procedure, thereby reopening the time to file a responsive pleading. As explained below, we disagree.

Our determination turns on the context in which the verification pages were offered to the court. As other jurisdictions have observed, "adding a verification to a complaint is not, strictly speaking, an amendment to the pleading itself." *Chisholm v. Vocational Sch. for Girls*, 103 Mont. 503, 508, 64 P.2d 838, 842 (1936). Moreover, the purpose of providing additional time to file a responsive pleading following an amendment is to offer the party an opportunity to respond to the amended allegations. *Turner Halsey Co. v. Lawrence Knitting Mills, Inc.*, 38 N.C. App. 569, 573, 248 S.E.2d 342, 345 (1978). Of course, if the allegations were not amended, this underlying purpose is not implicated.

Here, although the court accepted the verification pages into the trial record, the court's comments indicate that it treated those verifications as affidavits attesting to the truth of the allegations in the complaint, not as amendments to the contents of the complaint. And, as Wiley points out, those verifications had no impact on the allegations in the complaint. Accordingly, we hold that, in the context of this default judgment hearing, the submission of verifications, attesting to the truth of the allegations in the complaint, did not amend the complaint and reopen the time to file a responsive pleading. We therefore reject L3's argument.

**B. Failure to Serve Affidavit of Service**

L3 next argues that Wiley did not properly serve the motion for entry of default and a notice of hearing at least five days before the hearing on the motion, as required by Rule 6(d) of the North Carolina Rules of Civil Procedure. This argument is meritless. Rule 6(d) states that it applies to a written motion "other than one which may be heard *ex parte*." This Court has held that the requirements of Rule 6(d) are not applicable to motions for entry of default because, by their nature, these motions are heard *ex parte*. *G & M Sales of E. N.C., Inc. v. Brown*, 64 N.C. App. 592, 594, 307 S.E.2d 593, 594–95 (1983). This decision also is consistent with the text of Rule 55 which, as explained in more detail below, provides a different, three-day period in which to serve notice on a party who has appeared in the case in advance of the default judgment hearing. Accordingly, we reject L3's argument.

**C. Appearance Before Entry of Default Judgment**

L3 next argues that it had made an appearance in this action before entry of default judgment and thus was entitled to notice of the default judgment hearing under Rule 55 of the Rules of Civil Procedure. We are not persuaded.

Rule 55(b)(2) provides that, where "the party against whom judgment by default is sought has appeared in the action, that party (or, if appearing by representative, the representative) shall be served with written notice of the application for judgment at least three days prior to the hearing on such application."

When a party entitled to notice under this provision does not receive it, the court must vacate the default judgment. *Stanaland v. Stanaland*, 89 N.C. App. 111, 115, 365 S.E.2d 170, 172 (1988).

"Generally, an appearance requires some presentation or submission to the court." *Cabe v. Worley*, 140 N.C. App. 250, 253, 536 S.E.2d 328, 330 (2000). Nevertheless, "a defendant does not have to respond directly to a complaint in order for his actions to constitute an appearance." *Roland v. W & L Motor Lines, Inc.*, 32 N.C. App. 288, 289, 231 S.E.2d 685, 687 (1977). Instead, "an appearance may arise by implication when a defendant takes, seeks, or agrees to some step in the proceedings that is beneficial to himself or detrimental to the plaintiff." *Id.* For example, in *Coastal Federal Credit Union v. Falls*, this Court held that the defendants' negotiations with plaintiff's law firm over a payment plan could be sufficient to qualify as an "appearance" entitling the defendants to notice of a default judgment hearing. 217 N.C. App. 100, 103–07, 718 S.E.2d 192, 194–96 (2011).

Here, L3 has not identified any communications that could satisfy the appearance requirement. To be sure, L3 presented evidence of a series of unsuccessful attempts by its counsel to reach Wiley's counsel in the hour before the default judgment hearing occurred. But this Court has never held that unsuccessful, unilateral efforts to communicate with opposing counsel can constitute an "appearance" for purposes of Rule 55, and we are unwilling to do so here. We adhere

to the rule established in *Roland*, which permits an appearance by implication only "when a defendant takes, seeks, or agrees to some step in the proceedings that is beneficial to himself or detrimental to the plaintiff." *Roland*, 32 N.C. App. at 289, 231 S.E.2d at 687. Accordingly, we reject L3's argument.

**D. Sufficiency of Facts Alleged to Support Claims Asserted**

Finally, L3 argues that the allegations in the complaint are insufficient to state a valid claim on which relief can be granted and, as a result, the court lacked authority to enter judgment on those claims. But L3 does not present any argument on this point, instead stating that "[t]he law and facts are detailed at R. pp. 194–205 and are incorporated by reference herein." In a footnote, L3 then states that the arguments in this case require "detailed exposition" and that "[d]ue to page limitations, the Court is respectfully referred herein to prior briefs in the Record on Appeal, which are incorporated by reference."

This Court and our Supreme Court repeatedly have rejected attempts by litigants to "incorporate by reference" arguments found elsewhere in the trial record. *See, e.g.*, *Fortner v. J.K. Holding Co.*, 319 N.C. 640, 641–42, 357 S.E.2d 167, 167–68 (1987); *Stark v. N.C. Dep't of Env't & Nat. Res., Div. of Land Res.*, 224 N.C. App. 491, 513, 736 S.E.2d 553, 567 (2012); *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 615–16, 659 S.E.2d 442, 453 (2008). This precedent is particularly important in this Court, which adheres to strict page or word limits for briefs—limits

that L3 concedes it sought to avoid by referencing outside arguments rather than presenting them in the brief. Under Rule 28(b)(6), an issue "not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." We therefore treat this argument as abandoned.

## V. Exclusion of Certain Evidence at the Trial on Damages

We next turn to L3's arguments concerning the trial on damages. L3 first argues that the trial court erred by excluding certain evidence it sought to introduce at trial, including evidence related to the circumstances surrounding Wiley's discharge and the existence of the arbitration agreement. As explained below, we reject this argument.

As an initial matter, many of L3's evidentiary arguments are not preserved for appellate review. "A party must preserve the exclusion of evidence for appellate review by making a specific offer of proof unless the significance of the evidence is ascertainable from the record." *Griffis v. Lazarovich*, 161 N.C. App. 434, 438, 588 S.E.2d 918, 921 (2003).

Here, L3 challenges the trial court's refusal to permit L3 to ask various questions concerning the company's planned reduction in force, its employment practices, and the Plaintiffs' job performance. But the content and significance of the answers to these questions is not apparent from the record and there was no offer of proof. Accordingly, these issues are not preserved for appellate review. *See id.*

L3 also argues that the trial court erroneously prevented it from presenting any evidence concerning the parties' arbitration agreement. The parties' arbitration agreement is in the record and thus this issue properly is preserved for appellate review. Nevertheless, we reject this argument because the exclusion of the arbitration agreement, even if error, was harmless.

> Appellate courts do not set aside verdicts and judgments for technical or harmless error. It must appear that the error complained of was material and prejudicial, amounting to a denial of some substantial right. The appellant thus bears the burden of showing not only that an error was committed below, but also that such error was prejudicial—meaning that there was a reasonable possibility that, but for the error, the outcome would have been different.

*Faucette v. 6303 Carmel Rd., LLC*, __ N.C. App. __, __, 775 S.E.2d 316, 323 (2015).

Here, even if we assume the contents of the arbitration agreement had some minimal relevance, L3 has not shown that the exclusion of that evidence would have affected the calculation of compensatory damages owed to Wiley.[1] "The sole purpose of the damages trial was to determine the harm to [Wiley] caused by" L3's discriminatory termination of his employment. *See Hien Nguyen v. Taylor*, 219 N.C. App. 1, 16, 723 S.E.2d 551, 562 (2012). The availability of the arbitration procedures would not have impacted the jury's calculation of these compensatory damages, and thus, exclusion of this evidence was harmless.

---

[1] As explained in Part VI below, we vacate the award of punitive damages because Wiley failed to properly plead a request for punitive damages under Rule 9(k) of the Rules of Civil Procedure.

## VI.    Denial of Request for Punitive Damages

Finally, L3 argues that the trial court erred by denying its motion for a directed verdict with respect to punitive damages.  L3 contends that Wiley did not include a request for punitive damages or allege with particularity any of the aggravating factors that support punitive damages.  L3 thus contends that the trial court should not have submitted that issue to the jury.  We agree.

In 1994, our Supreme Court held in *Holloway v. Wachovia Bank & Trust Company* that "a plaintiff need not specially plead punitive damages as a prerequisite to recovering them at trial."  339 N.C. 338, 347, 452 S.E.2d 233, 238 (1994).  Instead, the Court held that, "where a pleading fairly apprises opposing parties of facts which will support an award of punitive damages, they may be recovered at trial without having been specially pleaded."  *Id.*

In 1995, apparently in response to *Holloway*, the General Assembly adopted Rule 9(k) of the North Carolina Rules of Civil Procedure.  1995 N.C. Sess. Laws ch. 514, § 3.  That rule provides as follows: "A demand for punitive damages shall be specifically stated, except for the amount, and the aggravating factor that supports the award of punitive damages shall be averred with particularity."  N.C. R. Civ. P. 9(k).

Thus, to recover punitive damages, "[P]laintiff's complaint must allege facts or elements showing the aggravating circumstances which would justify the award of

punitive damages." *Hart v. Brienza*, __ N.C. App. __, __, 784 S.E.2d 211, 218 (2016). Those aggravating factors are "(1) fraud; (2) malice; or (3) willful or wanton conduct." *Id.*

Here, the complaint does not contain a request for punitive damages. Indeed, the words "punitive damages" are not contained anywhere in the complaint's allegations or in the prayer for relief. Moreover, there are no allegations of any of the aggravating factors that can support an award of punitive damages. *See* N.C. R. Civ. P. 9(k). Thus, we hold that Wiley failed to properly plead a request for punitive damages under Rule 9(k). As a result, the trial court erred by rejecting L3's argument and submitting the punitive damages issue to the jury.[2]

## Conclusion

For the reasons set out above, we affirm the trial court's judgment with respect to the compensatory damages awarded to Plaintiff Harry A. Wiley, we vacate the award of punitive damages to Wiley, and we vacate the judgment entered in favor of Plaintiff Gerald D. Gilman for lack of standing. This case is remanded for entry of a new judgment consistent with this opinion.

AFFIRMED IN PART; VACATED IN PART AND REMANDED.

---

[2] L3 also challenges the trial court's denial of its motion for a directed verdict with respect to the award of compensatory damages to Wiley but, as with other issues in its brief, presents no argument, instead incorporating by reference arguments made in the trial court and contained in the record on appeal. As explained in Part IV.D above, the Rules of Appellate Procedure do not permit parties to incorporate by reference arguments set out in other pleadings. Accordingly, these arguments are abandoned on appeal. *See Stark*, 224 N.C. App. at 513, 736 S.E.2d at 567.

Chief Judge McGEE and Judge TYSON concur.