IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-601

Filed 16 April 2025

Caldwell County, No. 11 CVD 1624

JEANNIE ROBERTS ICENHOUR, Plaintiff,

v.

JEFFREY DAVID ICENHOUR, Defendant.

Appeal by Defendant from an order entered 16 April 2024 by Judge Richard S. Holloway in Caldwell County District Court. Heard in the Court of Appeals 28 January 2025.

*Wesley E. Starnes, for Plaintiff-Appellee.*

*Wilson, Lackey, Rohr & Hall, P.C., by Destin C. Hall, for Defendant-Appellant.*

WOOD, Judge.

Defendant appeals from an order entered 16 April 2024 finding there had not been a substantial change in circumstances to warrant modifying Defendant's alimony obligation and finding Defendant in contempt for failure to pay alimony as ordered. Defendant contends the trial court erred by failing to consider Defendant's debt payments and other relevant ultimate facts, by making findings of fact regarding Defendant's income and reason for changing employment, by imputing income to Defendant, and by finding Defendant in contempt.

## I.    Factual and Procedural Background

Plaintiff and Defendant were married on 20 June 1987, separated on 23 April 2011, and divorced on 4 June 2014.  The parties entered into a consent judgment on 10 January 2012 which resolved all issues, including spousal support and equitable distribution of the parties' martial property.  Defendant was ordered to pay $1,800.00 per month in alimony to Plaintiff, beginning 1 January 2012, until terminated by one of the statutory events in N.C. Gen. Stat. § 50-16.9.

 In 2014, Defendant filed a motion to modify alimony which was denied by the trial court.  On 15 February 2018, Defendant filed another motion to modify alimony alleging that his income had been reduced while his expenses were increasing. Plaintiff sought and received a show cause order on 10 April 2019 based on Defendant's alleged failure to fully pay his monthly alimony obligations starting in January of 2019.

On 17 January 2020, an Order Amending Alimony was entered, modifying Defendant's monthly alimony obligation to Plaintiff to $1,700.00 effective 1 January 2020.  Plaintiff voluntarily dismissed her motion for contempt.

On 25 August 2020 Plaintiff filed another motion for contempt and show cause order.  A corresponding show cause order was entered the same day.

On 29 December 2020, Defendant filed a motion to modify alimony.  The parties' motions came on for hearing on 29 March 2022.  On 6 June 2022, the trial court entered orders modifying Defendant's alimony obligation to $600.00 per month,

finding Defendant in civil contempt of the 17 January 2020 order, and requiring Defendant to pay $100.00 per month towards the arrearage and to pay $1,000.00 to Plaintiff for attorney's fees at the rate of $50.00 per month. Both parties appealed from the 6 June 2022 order.

In an unpublished opinion issued 1 August 2023, this Court held that the Alimony Order lacked "adequate findings to support its legal conclusions" and set aside the order and remanded the matter to the trial court for further proceedings. *Icenhour v. Icenhour*, 290 N.C. App. 126, 889 S.E.2d 535 (2023) (unpublished). This Court noted that "[a] conclusion of a substantial change in circumstances based solely on a change in income is inadequate and erroneous. Instead, the extant overall circumstances of the parties must be compared with those at the time of the award to determine whether a substantial change has occurred" *Id.* (cleaned up).

Upon return to the trial court, the court determined, in consultation with counsel for each party, that it would not take new evidence but would decide the matter on the record and evidence previously presented. On 16 April 2024, the trial court issued an Order on Remand. The trial court denied Defendant's motion to modify the alimony award finding Defendant failed to establish a substantial change in circumstances to warrant such a modification. In addition, the trial court found Defendant in contempt and ordered him to pay an extra $100.00 per month until the arrearage of $36,600.00 is paid in full. On remand the trial court made twenty-nine findings of fact to support its six conclusions of law. Defendant appeals from this

order.

## II.    Standard of Review

During appellate review of both alimony modification and contempt orders, "the standard . . . is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Kelly v. Kelly*, 228 N.C. App. 600, 601, 747 S.E.2d 268, 273 (2013) (cleaned up); *see also Spears v. Spears*, 245 N.C. App. 260, 273, 784 S.E.2d 485, 494 (2016). Whether the findings of fact support the legal conclusion of a substantial change under the circumstances is reviewed *de novo*. *Peeler v. Joseph*, 263 N.C. App. 198, 201, 823 S.E.2d 155, 158 (2018). The alimony determination, if supported by adequate findings and conclusions, is reviewed for abuse of discretion. *Dodson v. Dodson*, 190 N.C. App. 412, 415, 660 S.E.2d 93, 96 (2008).

## III.    Analysis

On appeal, Defendant raises four issues: whether the trial court committed reversible error by failing to consider Defendant's debt payments and other relevant ultimate facts; whether the trial court erred in making findings of fact regarding Defendant's income and reason for changing employment; whether the trial court erred by imputing income to Defendant; and whether the trial court erred in finding Defendant in contempt.

### A. Consideration of Debt Payments and Ultimate Facts

In North Carolina, N.C. Gen. Stat. §50-16.9 provides for the modification of alimony. "An order of a court of this State for alimony or postseparation support, whether contested or entered by consent, may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances by either party or anyone interested." N.C. Gen. Stat. § 50-16.9 (2024). When establishing an alimony award, the trial court must consider specific statutory factors. N.C. Gen. Stat. § 50-16.3A (b) (2024). These same factors are to be considered when evaluating a substantial change in that award. *Cunningham v. Cunningham*, 345 N.C. 430, 435, 480 S.E.2d 403, 406 (1997). Not every factor is required in all cases, but "the court must provide sufficient detail to satisfy a reviewing court that it has considered 'all relevant factors.'" *Rhew v. Rhew*, 138 N.C. App. 467, 472, 531 S.E.2d 471, 474 (2000). The resulting order must find "the ultimate facts which were raised by the defendant's motion to modify. . ." *Kelly v. Kelly*, 228 N.C. App. 600, 608, 747 S.E.2d 268, 276 (2013). "As a general rule, the changed circumstances necessary for modification of an alimony order must relate to the financial needs of the dependent spouse or the supporting spouse's ability to pay." *Cunningham* at 436, 480 S.E.2d at 406. There must be some "distinct and definite change in the financial circumstances of the parties." *Id.*

> However, it is error to modify alimony based on only one factor, such as a change in a party's income. Rather, the present overall circumstances of the parties must be compared with the circumstances existing at the time of

the original award in order to determine if there has been a substantial change.

*Dodson v Dodson*, 190 N.C. App. 412, 416, 660 S.E.2d 93, 96 (2008) (cleaned up).

Defendant contends the trial court failed to consider his debt payments, other expenses and the impact of Defendant's girlfriend on his expenses as relevant "ultimate facts." The trial court made the following findings to address these issues:

> 25. Defendant's expenses at the time of the order were $3,569.50. Defendant contends that his expenses at the time of the hearing were $4,043.46, at most a modest contention of change. In addition, Defendant acknowledged his girlfriend resided in his home. Defendant did not offer sufficient credible evidence from which the [c]ourt could determine the impact of Defendant's girlfriend upon his expenses. As such, the [c]ourt is unable to determine whether there has been a change in Defendant's expenses from the evidence and the record.

The trial court addressed Defendant's expenses and determined that Defendant's failure to present adequate evidence to support his claim made the ultimate determination of a change in expenses impossible. Defendant testified that his girlfriend lives with him and is employed but does not contribute consistently to payment of the bills. He did not produce evidence regarding her income, her contribution to the household expenses, or an increase in expenses related to her residing with him. He stated she "may" pay some of the light bill if he is short on money. There was no other testimony or evidence presented to determine what

increase in expenses was incurred because of her presence in the home such as increases for water, electricity, food or other expenses, leaving the trial court unable to determine any impact caused by her residing in the residence. Therefore, the trial court was unable to determine whether there was a substantial change in Defendant's expenses. "The movant bears the burden of showing a change of circumstances in order to modify . . . alimony." *Groseclose v. Groseclose*, 291 N.C. App. 409, 413, 896 S.E.2d 155, 160 (2023) (cleaned up). If Defendant has not provided the necessary information, then he has failed to meet his burden.

## B. Errors in Findings of Fact

Defendant next argues that the trial court's findings of fact 14, 15, 16, 20, 21, 22, 23 and 24 were not supported by competent evidence and cannot be relied upon to support the conclusions of law.

"'[F]indings of fact made by the trial judge are conclusive on appeal if supported by competent evidence, even if . . . there is evidence to the contrary." *Sisk v. Transylvania Cmty. Hosp.,* 364 N.C. 172, 179, 695 S.E.2d 429, 434 (2010) (cleaned up).

> [W]hen an appellate court determines that a finding of fact is not supported by sufficient evidence, the court must disregard that finding and examine whether the remaining findings support the trial court's conclusions of law. If the remaining findings support the trial court's conclusions, the appellate court must affirm, notwithstanding the existence of some invalid findings.

*In Re A.J.*, 386 N.C. 409, 410, 904 S.E.2d 707, 710 (2024).

1. Finding 14

Finding of fact 14 states, "In 2020, Defendant ceased paying his full amount of alimony to the Plaintiff. He made $5,200.00 in payments during the relevant time-period ($1,000.00 + $1,800.00 + $900.00 + $500.00 + $1,000.00 = $5,200.00)." Plaintiff's Exhibit 1 and testimony from Plaintiff's counsel's paralegal illustrate that in 2020 Defendant made $1,700.00 payments in each of January, February, and March. However, when he "ceased paying in full" in April, payments during that "relevant time period" included a $1,000.00 payment in April 2020; an $1,800.00 payment in May 2020; a $900.00 payment in June 2020; a $500.00 payment in January 2021; and a $1,000.00 payment in February 2021 totaling $5,200.00 in payments since he stopped paying in full. In addition, the calculation of total arrearage after credit for partial payments is addressed in findings of fact 27 and 28 and comports with the totals on Plaintiff's Exhibit 1. This finding of fact is clearly supported.

2. Finding 15

Finding of fact 15 states, "In 2020, the year of the January 17th, 2020, order, Defendant earned $67,106.00 for the year which equals $5,592.17. He was working at Richard Petty Motor Sports. He was furloughed for a time and upon his return his income was reduced."

The $67,106.00 noted by the trial court is the year-to-date income found on the 4 December 2020 paycheck from Richard Petty Motor Sports submitted as Plaintiff's Exhibit 4. Defendant's testimony indicated this would have been his last paycheck in 2020 due to his furlough and eventual layoff. The trial court determined a monthly amount of $5,592.17 by dividing the year-to-date income reported on the 4 December 2020 paystub by twelve months.

Further, the trial court stated that the year-to-date total of $67,106.00 was in fact his 2020 income which had been impacted by his furlough during COVID. Defendant's testimony concerning his termination from Richard Petty Motor Sports due to the pandemic as well as his receipt of an unknown amount in unemployment payments from the end of 2020 through the beginning of 2021 support this determination.

3. Findings of Fact 16 and 24

Defendant contends that together findings of fact 16 and 24 inaccurately imply that he chose to leave Richard Petty Motor Sports and had no concerns about unemployment. The findings at issue read:

> 16. Defendant changed employment, in February of 2021, when he went to work at Special Event Transportation, where he worked for three weeks.

> 24. The Court has considered the ease with which Defendant was able to change employment. He was employed at Richard Petty Motor Sports at the time of the last order in January 2020. He left this employment and

> went to Special Event Transportation, which he left to take the job at Big Machine. He then left Big Machine to work at Big Wheels in November 2021[.] [The Court also considered whether] his concerns about finding other employment were anything other than speculation.

Defendant testified that he was first furloughed and then laid off from Richard Petty Motor Sports during the COVID pandemic in November 2020 and was out of work until February 2021 when he found employment at Special Event Transportation ("SET"). However, he did not provide any documentation to evidence his unemployment payments. He then testified that he stayed at SET for only three weeks because he acquired a higher paying job at Big Machine. Finally, Defendant reported that in November 2021 he transitioned from Big Machine to Big Wheels because based on his twenty years of experience in the racing industry he was concerned that Big Machine would not have a team in the coming year, and he would again be out of a job.

The trial court's finding of fact 16 directly reflects Defendant's testimony regarding his limited time at SET. Defendant testified, he was at SET for "three weeks or so till the job at Big Machine came open." Therefore, Defendant's own testimony is competent evidence supporting the trial court's finding.

Similarly, the employment timeline illustrated in finding of fact 24 is also supported by Defendant's testimony. However, Defendant contends that the findings concerning the "ease" of his employment transitions and "speculation" about job security are not supported by competent evidence. During his testimony, Defendant

made a vague statement that he had "some concern" about job security but offered no evidence or corroborating testimony as to why he chose to leave his higher paying job at Big Machine. This Court has consistently held that the trial court is "the sole judge of the credibility and weight of the evidence, and it [is] free to accept or reject the testimony of a witness, either in whole or in part, depending solely upon whether it believes or disbelieves the same." *State v. Johnson*, 378 N.C. 236, 242, 861 S.E.2d 474, 482 (2021) (cleaned up). It was entirely within the trial court's discretion to disbelieve Defendant's reasoning for leaving and question the frequency of his employment transitions. We conclude that findings of fact 16 and 24 were supported by competent evidence.

4. Findings of Fact 20, 21, 22 and 23

Defendant challenges the trial court's findings of fact 20, 21, 22 and 23 all of which address Defendant's income.

> 20. At Big Wheels, Defendant earned $5,706.20 per month.

> 21. Defendant's income in 2021, the year before the filing of his motion was $58,774.51 while at Big Machine Racing, LLC; $4,078.50 while at Special Event Transportation, Inc.; $1,835.83 while at Big Wheels Trucking, LLC; and an unknown amount in unemployment benefits. Thus, Defendant's income for 2021 was $64,688.84, plus an unknown amount of unemployment. The Court is without sufficient information to find a change in Defendant's income in 2021, without the evidence concerning his unemployment benefits. Even without the unemployment benefits, Defendant's income in

2021 had not changed substantially from his income at the time of the entry of the last order.

22. What is clear to the Court is that Defendant's income has remained steady since the entry of the January 17th, 2020 order, with income of 2020: $5,592.17 per month: $5390.74 per month plus an unknown amount of unemployment; and 2022: $5706.20 per month. The evidence is that even with his brief unemployment, Defendant's income had changed modestly and the Court finds so.

23. Defendant's decision to leave Big Machine where he earned $6,101.33 per month to take employment with Big Wheels where he earned $5,706.20 per month, without any factual or well-reasoned basis demonstrates that Defendant acted in deliberate disregard for his support obligations. Defendant's income of $6,101.33 per month exceeded his earnings at the time of the prior order that he seeks to modify, when his income was $5,592.17 per month.

In finding 20 and 23, the trial court found as fact that Defendant's income at Big Wheels Trucking was $5,706.20 per month. Both Defendant and Plaintiff entered Defendant's paystubs into evidence and Defendant testified to them on both direct and cross-examination. The same paystub also reports $735.00 in miscellaneous reimbursement. Absent any evidence concerning the purpose of the reimbursement,

the trial court was within its discretion to include it in its calculation of Defendant's income.[1]

Plaintiff concedes that finding of fact 21 contains a typographical or clerical error. The trial court stated, "Defendant's income in 2021, the year *before* the filing of this motion." However, 2021 was the year after this motion was filed, 29 December 2020. The trial court correctly identified the filing date in finding of fact 12 stating "Defendant filed a motion to modify the order for alimony on December 29th, 2020." Defendant makes no showing as to how he is harmed by this clerical error.

> Appellate courts do not set aside verdicts and judgments for technical or harmless error. It must appear that the error . . . was material and prejudicial, amounting to a denial of some substantial right. The appellant thus bears the burden of showing not only that an error was committed below, but also that such error was prejudicial—meaning that there was a reasonable possibility that, but for the error, the outcome would have been different.

*Wiley v. L3 Commc'ns Vertex Aerospace* 251 N.C. App. 354, 266, 795 S.E.2d 580, 589 (2016) (quoting *Faucette v. 6303 Carmel Road, LLC*, 242 N.C. App. 267, 274, 775

---

[1] The year-to-date income of $13,749.96 + $735.00 in miscellaneous equals $14,484.96. $14,484.96 divided by 11 weeks equals $1,316.81 per week. $1,316.81 multiplied by 52 weeks equals $68,474.35 per year or $5,706.20 per month.

S.E.2d 316, 323 (2015)). We conclude this clerical error does not constitute prejudicial error.

Defendant also contends there was error in the trial court's finding that the court included nontaxable income in its determination of the Defendant's income from SET. Defendant's W-2 from 2021 clearly states that his gross income was $4,078.50 and this Court has consistently held that gross income can be appropriate for determining a party's ability to meet alimony payments. *Britt v. Britt*, 29 N.C. App. 463, 471, 271 S.E.2d 921, 927 (1980). It is within the trial court's sound discretion to have utilized Defendant's reported gross income for its calculation.

Finding 22 states that Defendant's income had been relatively steady during the time between the 2020 and 2022 orders. As discussed supra, this finding of fact is well supported. Defendant earned $5,592.17 per month plus unknown unemployment benefits in 2020, $5,309.74 per month in 2021 plus unknown unemployment benefits, and $5,706.20 per month in 2022. "Minor fluctuations in income are a common occurrence and the likelihood that they would occur must have been considered by the court when it entered a decree for alimony." *Britt* at 472, 271 S.E.2d at 927, *see also Kelly* at 604, 747 S.E.2d at 274.

All contested findings of fact are supported by competent evidence. The findings of fact in turn support the trial court's conclusion of law that Defendant failed to establish a substantial change in circumstances to warrant a modification of the alimony.

## C. Imputing Income

Defendant contends that the trial court erred in imputing income to him when Plaintiff failed to prove bad faith on the part of the Defendant.

> The trial court may refuse to modify support and/or alimony on the basis of an individual's earning capacity instead of his actual income when the evidence presented to the trial court shows that a husband has disregarded his marital and parental obligations by: (1) failing to exercise his reasonable capacity to earn, (2) deliberately avoiding his family's financial responsibilities, (3) *acting in deliberate disregard for his support obligations*, (4) refusing to seek or to accept gainful employment, (5) willfully refusing to secure or take a job, (6) deliberately not applying himself to his business, (7) intentionally depressing his income to an artificial low, or (8) intentionally leaving his employment to go into another business.

*Wolf v. Wolf*, 151 N.C. App. 523, 526-27, 566 S.E.2d 516, 518-19 (2002) (cleaned up) (emphasis added); s*ee also Sternola v. Aljian*, 293 N.C. App. 166, 172, 900 S.E.2d 139, 144 (2024).

In finding of fact 23, the trial court found "Defendant's decision to leave Big Machine where he earned $6,101.33 per month to take employment with Big Wheels where he earned $5,706.20 per month, without any factual or well-reasoned basis demonstrates that Defendant *acted in deliberate disregard for his support obligations. . . .*" The trial court also found, "Defendant testified that his decision to change employment was based upon concerns for his employment the next year.

- 15 -

Defendant gave no fact or reasoning justifying his alleged concerns." Finally, the trial court made note of the "ease with which" Defendant was able to change employment and that his concerns about finding other employment were not "anything other than speculation."

Defendant's testimony was the only evidence offered to explain why he chose to change jobs.

> Q. Why did you – why'd you leave that job?
> . . .
>
> THE WITNESS: My understanding of the reasoning is, we were -- they didn't know if they were going to proceed this year[] with the race team or not.
>
> Q. Okay. And how long have you worked in this general business of -- of hauling racecars?
>
> A. Nineteen, twenty years.
>
> Q. And in that business, is it common for these haulers, from year to year, for it to be uncertain. . .
>
> A. Yes.
>
> Q. . . . as to whether they're going to go the next year?
>
> A. Yes. Yes, it is.
>
> Q. And -- and did you have some concern with this job that you were going to be without a job. . .
>
> A. Yes.
>
> Q. . . . come race season?
>
> A. Yes.

The trial court is the sole judge of credibility and is free to weigh the testimony in its discretion. *State v. Johnson*, 378 N.C. 236, 242, 861 S.E.2d 474, 482 (2021) (cleaned up). The trial court considered the available information regarding Defendant's choice to change jobs and determined Defendant made speculative choices of employment in disregard of his obligation to pay alimony. Therefore, the trial court was free to impute income based on his proven earning capacity of $6,101.33 per month.

**D. Contempt**

Finally, Defendant contends that because he is unable to comply with the alimony order he should not be held in contempt. Additionally, he notes calculation errors in the dollar amount of arrears.

"Civil contempt is employed to coerce contumacious defendants into compliance with the orders of the court." *Bossian v. Bossian*, 284 N.C. App. 208, 214, 875 S.E.2d 570, 576 (2022). Pursuant to N.C. Gen. Stat. § 5A-21(a),

> "[f]ailure to comply with a court order is a continuing civil contempt as long as:
> (1) The order remains in force;
> (2) The purpose of the order may still be served by compliance with the order;
> (2a) The noncompliance by the person to whom the order is directed is willful; and
> (3) The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.

N.C. Gen. Stat. § 5A-21(a) (2024)

"It is well established that the trial court cannot hold a defendant in contempt unless the court first has sufficient evidence to support a factual finding that the defendant had the ability to pay, in addition to all other required findings to support contempt." *Groseclose* at 427-28, 896 S.E.2d at 168. The trial court made a sufficient finding that "Defendant's income of $6,101.33 per month exceeded his earning at the time of the prior order that he seeks to modify, when his income was $5,592.17 per month." That, in addition to the findings that Defendant "acted in deliberate disregard for his support obligations" support the trial court's conclusion that Defendant is in civil contempt.

Plaintiff concedes that a clerical miscalculation of the amount Defendant is in arrears exists. Clerical mistakes are "mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission . . ." N.C. Gen. Stat. § 1A-1, R. Civ. P. 60. "A clerical error is defined as an error resulting from a minor mistake or inadvertence, especially in writing or copying something on the record, and not from judicial reasoning or determination." *Face v. Face*, __ N.C. App. __, 909 S.E.2d 521, 532 (2024) (cleaned up). Here, the trial court stated Defendant owed an arrearage of $36,600.00. However, from January 2020 through 22 March 2022 Defendant owed $1,700.00 per month, which totals $45,900.00. As stated in finding of fact 27, Defendant had paid $10,300.00 during that time which left a total of $35,600.00 unpaid. Accordingly, we remand to the trial court for correction of the

arrearage to the amount of $35,600.00.

## IV.  Conclusion

For the foregoing reasons we affirm the trial court's determination that Defendant failed to prove a substantial change of circumstances to warrant modification of the alimony order.  However, we remand for correction of the clerical error in the calculation of arrearage which shall be corrected to reflect an arrearage of $35,600.00 as of 6 June 2022.  It is so ordered.


AFFIRMED AND REMANDED FOR CORRECTION OF CLERICAL ERROR.

Judge COLLINS and Judge GRIFFIN concur.